**STATE of Rhode Island**

v.

**RHODE ISLAND EMPLOYMENT SECURITY ALLIANCE, LOCAL 401, SEIU, AFL–CIO.**

No. 2002–625–Appeal.

Supreme Court of Rhode Island.

Dec. 12, 2003.

Marc Gursky, Providence, for Plaintiff.

John J. Turano, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, GOLDBERG, and SUTTELL, JJ.

## O P I N I O N

GOLDBERG, Justice.

This case came before the Supreme Court for oral argument on October 29, 2003, pursuant to the appeal of the plaintiff, the State of Rhode Island (plaintiff or state), from a Superior Court judgment denying its motion to vacate an arbitration award and from a judgment confirming that award.

### Facts and Procedural History

In 1989, the state and the defendant, Rhode Island Employment Security Alliance, Local 401, SEIU, AFL–CIO (defendant or Local 401), negotiated a collective bargaining agreement (CBA), effective July 1, 1992, through June 30, 1999. Local 401 is the collective bargaining agent for employees of the Department of Labor and Training. The CBA included a Letter of Understanding (parity letter) that provided as follows:

"It is understood by RIESA, Local 401, that in situations where there is an im-

provement in wages or benefits negotiated by the Department of Administration with other unionized groups which are contingent on concessions, RIESA, Local 401 will make the decision whether to accept the benefit(s) and be bound by the concessions, or elect not to accept the improved wages and/or benefits.

"In situations where there are improvements in wages and/or benefits with no concessions attached thereto, RIESA, Local 401, will receive the wages and/or benefit improvement(s)."

On September 21, 1993, the state executed a collective bargaining agreement with another union, Local 580, which included a wage increase for certain job classifications. Upon learning of this newly negotiated contract, yet another union, the Rhode Island Probation and Parole Association (RIPPA), filed a grievance alleging a violation of the parity provision of its own collective bargaining agreement. RIPPA's parity provision, which was similar to Local 401's parity letter, entitled RIPPA to any wage or benefit increase that the state negotiated with another union. After the state rejected RIPPA's claim, the grievance was submitted to arbitration. On April 28, 1997, RIPPA was awarded a wage increase identical to that in the Local 580 contract.

Based upon the RIPPA arbitration award, Local 401 submitted a grievance to the state on July 3, 1997, and asserted that the state "violated the contract when it failed to grant improvements in wages and benefits to Local 401 bargaining unit members that it granted to members of other unionized groups." The defendant re-

quested that the state "immediately make whole Local 401 bargaining unit members for all increases in wages and fringe benefits which it has granted to other unionized groups." The state rejected Local 401's claim, and the issue proceeded to arbitration.

In May 2000, the arbitrator sustained Local 401's grievance and determined that the state had violated the CBA by not offering Local 401 the same benefits that RIPPA members received pursuant to its arbitration award. First, he found that the grievance was timely filed under the CBA ten-day filing requirement because Local 401 filed the grievance within one day of learning of the RIPPA arbitration award. Second, the arbitrator concluded that the RIPPA arbitration award was the result of a negotiation because both parties agreed to allow the arbitrator in that case to modify the RIPPA contract on the basis of equitable considerations.[1] The arbitrator reasoned that:

"The fact that the State did not directly agree to give the RIPPA bargaining unit employees the enhanced benefits is not the primary consideration when determining whether the Local 401's parity language is applicable. The main consideration is whether the State agreed with another union to a *process* that resulted in better benefits for the other union. The State is, of course, not prohibited from agreeing to give another union better benefits nor from agreeing to a binding process that results in better benefits for another union. However, the State is committed to provide the better benefits to Local 401 because the State's actions were voluntary."

1. The arbitrator concluded that "[t]he RIPPA arbitration was not a typical interest arbitration" and found that although the proceeding "was commenced as a grievance arbitration[,] * * * the parties agreed (or negotiated) to expand [the arbitrator's] authority and permit

him to consider principles of both grievance and interest arbitration." Thus, he determined that the award in the RIPPA arbitration was "an equitable result based upon all of the circumstances as well as the principles of both grievance and interest arbitration."

Accordingly, the arbitrator determined that the Local 401 parity letter was triggered and he awarded Local 401 the same benefits that RIPPA members received pursuant to its arbitration award.

In July 2000, the state filed a motion with the Superior Court seeking to vacate the arbitration award. The state argued that the arbitrator exceeded his authority in making the award, that the award was irrational and that it did not draw its essence from the contract. After considering these arguments, the Superior Court justice disagreed with the state and concluded that the arbitration award drew its essence from the CBA. Therefore, he denied the state's motion to vacate and proceeded to confirm the award. In doing so, the Superior Court justice specifically noted that:

> "the arbitrator made extensive reference to the parity letter and determined that the 'situations' referred to in the parity letter were broad enough to include the award of increased benefits to another union after arbitration. While the award is not the only one that could be reasonably made, it is a passably plausible one drawn from the parity letter."

The state has raised numerous issues on appeal; most of these issues, however, were not properly preserved for appellate review. Accordingly, we shall address only those issues that are appropriately before the Court.

## Discussion

■ Generally, judicial review of an arbitration award is limited. "Absent a manifest disregard of a contractual provision or a completely irrational result, [an arbitration] award will be upheld." *Rhode Island Brotherhood of Correctional Officers v. State Department of Corrections,* 707 A.2d 1229, 1234 (R.I.1998) (quoting *Town of Coventry v. Turco,* 574 A.2d 143,

146 (R.I.1990)). However, G.L.1956 § 28–9–18 sets forth several grounds upon which an arbitration award must be vacated. Specifically, § 28–9–18(a)(2) states that an award must be vacated "[w]here the arbitrator or arbitrators exceeded their powers." It is this provision with which we concern ourselves.

■ It is well settled that an arbitrator exceeds his or her powers under § 28–9–18(a)(2) if the arbitration award fails to " 'draw its essence' from the agreement, if it was not based upon a 'passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." *State Department of Children, Youth and Families v. Rhode Island Council 94, American Federation of State, County, and Municipal Employees, AFL–CIO,* 713 A.2d 1250, 1253 (R.I.1998). As we have previously stated, "[a]lthough public policy favors the final resolution of disputes * * * by arbitration, this policy relies on the premise that arbitrators act within their power and authority." *Turco,* 574 A.2d at 147. When an arbitrator ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed, the arbitrator has exceeded his authority and the award will be set aside. *Rhode Island Council 94, AFSCME, AFL–CIO v. State,* 714 A.2d 584, 594 (R.I.1998) (citing Elkouri & Elkouri, *How Arbitration Works,* 482–83 (5th ed. 1997)). "[A]mendment by interpretation effectively 'usurp[s] the role of the labor organization and employer' in the collective-bargaining process." *Id.* Consequently, the question to be resolved in this case is whether the arbitrator's award drew its essence from the parties' agreement. We conclude that it did not.

■ Our analysis is guided by long-established rules of contract interpretation. "Unless plain and unambiguous in-

tent to the contrary is manifested, words used in contract language are assigned their ordinary meaning." *Cerilli v. Newport Offshore, Ltd.,* 612 A.2d 35, 37–38 (R.I.1992). A contract is ambiguous "only when it is reasonably and clearly susceptible of more than one interpretation." *Rotelli v. Catanzaro,* 686 A.2d 91, 94 (R.I. 1996). The CBA at issue unequivocally provides that Local 401's rights under the parity letter are triggered when a wage or benefit increase is *"negotiated* by the Department of Administration with other unionized groups." (Emphasis added.) Black's Law Dictionary defines a "negotiation" as a process that "involves complete autonomy for the parties involved, *without the intervention of third parties."* Black's Law Dictionary, 1059 (7th ed. 1999). (Emphasis added.) As noted by the arbitrator, the parity letter language "only covers a situation in which the employer *negotiates* (agrees to) a more favorable settlement with a second union." Consequently, to circumvent this language, the arbitrator characterized the RIPPA arbitration as a negotiation merely because "the state agreed with another union to a *process* that resulted in better benefits for the other union." This is an expansion of the plain language of the CBA such that it amounts to an amendment of the contract. Simply put, an arbitration proceeding is not a contract negotiation.

█  Arbitration is a quasi-judicial proceeding; it is an adversary proceeding and not a negotiation; nor is an arbitration award a negotiated settlement. *Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Co.,* 783 A.2d 398, 403 (R.I.2001). "[T]hough informal in nature, an arbitration proceeding is nonetheless a judicial, or quasi-judicial, procedure" which "presupposes a mutual agreement as to the procedures to be followed." 4 Am.Jur.2d *Alternative Dispute Resolution* § 180 at 207 (1995). Merely because the state and RIPPA agreed to certain concessions concerning the arbitrator's authority in that proceeding, the arbitrator in the case before us concluded that the RIPPA arbitration was a negotiation. However, both procedural and substantive agreements are presupposed in arbitration proceedings. Simply by agreeing to a particular procedure upon which the arbitration will proceed, parties to arbitration do not and cannot convert an arbitration into a collective bargaining negotiation. Although the state in the RIPPA arbitration may have agreed to the procedures and substantive principles available to the arbitrator, it did not consent, in any way, to the result: the arbitration award. The CBA clearly states that Local 401's rights under the parity letter will be triggered by negotiation, not arbitration. We conclude that the arbitrator manifestly disregarded the plain meaning of the CBA and reached an irrational result. This award did not draw its essence from the CBA nor was it a passably plausible interpretation of the parity letter. Therefore the hearing justice erred in refusing to vacate the award and in confirming the award.

Accordingly, we are of the opinion that the arbitrator exceeded his authority and the award must be vacated. We need not address the additional arguments that the parties raised.

## Conclusion

For the reasons stated, we vacate the judgment confirming the arbitration award and vacate the arbitration award. The papers in this case are returned to the Superior Court.

Justice FLAHERTY did not participate.