DECISION
This action concerns the propriety of an arbitration decision that interpreted a collective bargaining agreement between the Rhode Island Department of Health and the National Association of Government Employees as requiring the Department to give equal weight to an applicant's education, experience and interview in making any promotional decision under the contract. Although the Arbitrator found that the assignment of equal weight to those three promotional criteria would not have changed the Department's promotional decision in this case, he nonetheless required the Department to weigh the criteria equally with respect to all future promotional decisions.
The Department has filed a petition to vacate the Arbitration Award, arguing that it was denied the opportunity to present evidence and legal argument to the Arbitrator on this issue of contract interpretation. The Union has filed a cross motion to confirm the Arbitration Award, contending that the Arbitrator was given broad power to interpret the contract in deciding the issues presented at arbitration and that his interpretation was reasonable.
For the reasons set forth in this Decision, this Court finds that the Arbitrator exceeded his power by ruling on an issue of contract interpretation that was not properly *Page 2 
before him and by failing to make a mutual, final and definite award as to all issues properly raised at arbitration. Accordingly, this Court grants the Department's petition to vacate the Arbitration Award and denies the Union's motion to confirm it.
 I. Factual Background and Procedural History
The Department of Health (the "Department") and the National Association of Government Employees (the "Union") are parties to a collective bargaining agreement (the "CBA"). The CBA submits disputes to arbitration "arising out of the provisions of this contract relating to the application or interpretation thereof." CBA at 56 (emphasis added). Section 10.13(3) of the CBA, at issue here, requires the Department to rank each candidate for promotion based on his or her education, professional experience, and interview. Id. at 21-22. The CBA is silent as to the weight to be assigned to each of the criteria.
In July 2004, the Department posted a vacancy notice for the position of Senior Nursing Care Evaluator — a job that requires the supervision of health care facility inspections to ensure that the facilities are in compliance with state and federal regulations and the applicable standards of care. Before posting the vacancy, the Department constructed the selection criteria for promotion to the position. It based the criteria on functional title, position classification and the needs of the Department. Mindful that the Department intended to hire new facility surveyors and that those persons would be expected to use new minimum data sets in the evaluation of facilities, the Department developed the criteria to emphasize experience managing teams and training personnel. It thus created a scoring sheet for the promotional applicants that *Page 3 
assigned 50% of the total points that could be awarded to the combined categories of education and professional experience and the other 50% to the in-person interview. See Deft's Ex. G.
Four applicants applied, including Patricia Linehan, Marian Mulholland and Maureen Farrelly. The Department selected Linehan for promotion, notwithstanding the fact that she had lesser seniority than the other applicants. It did so based in part on her strong interview, which reflected excellent supervisory skills and an interest in team building and mentoring.
Following the promotion of Linehan, the Union filed a timely Level 1 grievance on behalf of Mulholland and Farrelly, alleging simply that the Department violated Article X of the CBA by not promoting either one of them. On May 24, 2005, Edward D'Arezzo, the Assistant Director of the Department of Health, denied the Level 1 grievance. He found that the Department had followed the CBA in selecting Linehan for promotion to Senior Nursing Care Supervisor.
The Union subsequently filed a Level 3 grievance before Belinda A. McLaughlin, a Hearing Officer for the Department of Administration Labor and Employment Practice Group.[1] On July 5, 2005, she denied that grievance. In her ruling, she framed the Union's argument, as follows:
 The Union alleges that the department is not using the required uniform numerical scoring format. The Union has no input on the format or how the Department weighs it. The format used changes every time the Department has a promotion. The process leads to customizing the format. In this case, the format gives greater points for experience that could lead to an advantage in the scoring process that would not otherwise be there. It is not uniform. The individual who was appointed the position got additional points the grievant did not. They were given a disadvantage for professional experience. The whole process is flawed. The Union is asking *Page 4 
that the Department use a uniform scoring format and that the Department redo the process for the subject position.
McLaughlin Dec'n at 2. In denying the grievance, she rejected the Union's claim that the scoring process had been done unfairly. There is no indication in her decision that the Union raised or that she addressed the issue of contract interpretation at issue here — namely the weight to be assigned to an applicant's education, experience and interview under the CBA.
The Union then timely filed a demand for arbitration, framing the dispute as follows:
 The employer, Department of Health, violated the collective bargaining agreement including but not limited to Article X in the method it used to make a promotion to Senior Nursing Care Evaluator.
Union's Demand for Arbitration. The Union argued that the remedy should be rescission of the Department's decision to promote Linehan and an order requiring the Department to make the promotion in accordance with the contract. Id. The parties subsequently agreed to place the following issue before the Arbitrator for decision:
 Did the Rhode Island Department of Health violate the collective bargaining agreement when it selected Patricia Linehan for the post of Senior Nursing Care Evaluator? If so, what shall be the remedy?
Stipulated Submission to Arbitration.
At arbitration, the Union argued that, under § 10.13(3) of the CBA, the candidates' seniority and qualifications should have been given equal weight, with seniority being determinative in the event of a tie. It contended that the Department relegated seniority to a meaningless position, allowing for promotion of Linehan over the two candidates with greater seniority. *Page 5 
In response, the Department argued that it exercised its best judgment in determining the most qualified candidate for promotion based on the applicants' education, experience and interviews. It argued further that the Union could not claim that the Department acted arbitrarily or capriciously in making its decision. As the Department determined that Linehan was more qualified for promotion than the other applicants, it argued that the candidates' qualifications were not equal. As a result, the Department claimed that it did not err in failing to use seniority as a determining factor in its promotional decision.
The Arbitrator accepted the Department's argument and found that seniority should be a determinative factor only when the qualifications (which also include seniority) are substantially equal. He reasoned:
 I cannot read the introductory paragraph of section 10.13 to require the Department give equal weight to seniority and qualifications. Rather, it appears to provide only that seniority will be the tie-breaker if all of the factors, including seniority and qualifications, are equal for two or more candidates.
Arbitration Award at 10.
In its post-arbitration memoranda, the Union also raised, for the first time in the arbitration proceeding, an argument that the Department improperly interpreted and applied the CBA in awarding the subject promotion. It argued that the CBA requires the Department to give equal weight to the promotional criteria, assigning 1/3 of the applicant's total score to education, 1/3 to experience and 1/3 to the interview. It further argued that the Department skewed the proper weights to be afforded these criteria by assigning education and experience, collectively, a weight of 50% and the other 50% to the interview. This process, according to the Union, improperly gave undue weight to the *Page 6 
interview and minimized education and experience. According to the Union, therefore, Linehan received the promotion because she interviewed better, even though she had the least seniority.
Not anticipating this issue of contract interpretation, the Department did not respond to these arguments of the Union in its post-arbitration memorandum. The parties filed their memoranda simultaneously.
The Arbitrator nonetheless addressed the issue of contract interpretation raised by the Union, without benefit of any evidence or legal argument from the Department. He found:
 The three criteria are treated the same in the agreement and there is no language to suggest that any one is more important than the others or should be weighted more heavily when making promotions.
Id. at 11.
Upset that the Arbitrator had ruled on an issue that it had not been given the opportunity to address either from an evidentiary or a legal standpoint, the Department moved to reopen the hearing. It asked for leave to submit evidence that was contrary to the manner in which the Arbitrator, at the behest of the Union, had interpreted the CBA. It wanted to submit proof of the Department's alleged 20 year past practice of assigning varying weights to the selection criteria in making promotional decisions. It also wanted to submit legal argument on the issue of contract interpretation. The Arbitrator denied the Department's motion to reopen the hearing.
In addition, despite discussing both the issues of seniority and the weights to be assigned to promotional criteria in the body of his ruling, the Arbitrator's Award only concerns the weights to be assigned to each of the criteria and does not contain his ruling *Page 7 
as to the issue of seniority. Although the Arbitrator found that the Department had erred in interpreting the contract by failing to give the selection criteria equal weight, he determined that weighing those criteria in that fashion would not have changed the Department's decision to promote Linehan. He nonetheless required the Department, indicta, to assign the selection criteria equal weight with respect to all future promotional decisions under the CBA.[2]
After the Arbitrator published the Arbitration Award, the Department filed a petition to vacate his decision under R.I.G.L. § 28-9-18 and also sought a stay from this Court to prevent implementation of the Arbitration Award. In response, the Union moved to confirm the Arbitration Award. On March 7, 2008, this Court granted the motion to stay, with the caveat that the Department's petition to vacate and the Union's motion to confirm would be briefed and decided before any other unrelated promotional decisions were made. The Court further ordered that the Department could return to this Court to renew its motion to stay if it had to make any promotions prior to this Court's decision on the merits of the Department's petition to vacate and the Union's motion to confirm the Arbitration Award.
On June 20, 2008, while this Court had the matter under advisement, the Department informed the Court that it needed to go forward with the planned hiring of critical nursing staff. In essence, it sought to renew its motion to stay, pending this *Page 8 
Court's decision on the merits of the petition to vacate and the motion to confirm. Mindful of the Department's expressed need to go forward immediately with the hiring of critical nursing staff prior to this Court's decision, this Court found: (1) that the Department had established a likelihood of success with respect to its claim, contained in its petition to vacate, that the Arbitrator had exceeded his power in ruling on an issue of contract interpretation without affording the Department an opportunity to address that issue from either a legal or evidentiary standpoint; and (2) that the Department could suffer irreparable harm if it were required to make promotional decisions in accordance with the Arbitration Award that it had proven, more likely than not, was in excess of the Arbitrator's power. Accordingly, this Court entered an order staying the decision of the Arbitrator, pending the decision of this Court on the merits of the petition to vacate and the motion to confirm.
 II. The Parties' Arguments
In its memorandum filed with this Court, the Department takes the position that the Arbitration Award should be vacated because the Arbitrator "exceeded his power, or so imperfectly executed [it], that a mutual, final, and definite award upon the subject matter submitted was not made." R.I.G.L. § 28-9-18(a)(2). The Department contends that the Union never validly submitted to arbitration the issue of the weight to be assigned to each of the selection criteria under the CBA because: (1) the Union never raised such an argument before filing its post-arbitration brief; and (2) the Department had no opportunity to respond to that argument or to enter contrary evidence regarding the *Page 9 
proper interpretation of the CBA.[3] The Department avers that, by ruling on this issue of contract interpretation, without affording the Department the opportunity to brief it or to present evidence of its past practice as an aid in interpreting the CBA, the Arbitrator exceeded his power and imperfectly executed it. The Department also contends that by denying it the opportunity to present evidence and argument as to the weight to be assigned to the selection criteria, the Arbitrator effectively amended the contact, instead of interpreting it, in violation of Rhode Island law. The Department also argues that interpreting the contract to require it to assign equal weight to the promotional criteria interferes with its managerial discretion and infringes upon its statutory duty to protect the public health. It maintains that it needs to weigh the interview responses as heavily as the candidates' combined education and experience to ensure that the best possible candidate is promoted to the position of Senior Nursing Care Evaluator.
In response, the Union contends that there is no basis in law for vacating the Arbitration Award because the weight to be assigned to the promotional criteria under the CBA was the subject of arbitration. The Union argues that this question was encompassed within the broad language of the parties' stipulated arbitration statement. Moreover, the Union contends that § 10.13 of the CBA — outlining the criteria for promotion — was submitted to the Arbitrator and made part of the record, as was the Department's score sheet for the candidates that listed the three criteria. Finally, the Union points to the original grievance, which was predicated upon its assertion that the process used by the Department was not in conformity with Article X of the CBA, and *Page 10 
the hearing officer's July 5, 2005 ruling on that grievance, as evidence that the Department had notice that the weight to be assigned to the promotional criteria was an issue specifically grieved by the Union.[4] Thus, the Union contends, it is clear that the Arbitrator had the authority to interpret the CBA to determine whether proper procedures, including the appropriate weight to be assigned to the selection criteria, were followed. Furthermore, the Union asserts that the Arbitrator's interpretation of the disputed provision of the CBA was "passably plausible" and "drew its essence" from the CBA because his assignment of equal weight to each of the selection criteria is a reasonable interpretation of the contract.
 IV. Standard of Review
In Rhode Island, there is a strong policy in favor of finding arbitrability. "A court shall rule in favor of submitting a dispute to arbitration unless the arbitration clause of the collective bargaining agreement cannot be interpreted to include the asserted dispute, and all doubts should be resolved in favor of arbitration." R.I. Court ReportersAlliance v. R.I., 591 A.2d 376, 378 (R.I. 1991) (citing UnitedSteelworkers of America v. Warrior Gulf Navigation Co., 363 U.S. 574,582-83 (1960)). In this case, however, this Court is not asked to rule on whether the weight to be afforded the promotional criteria is arbitrable under the CBA. Instead, the Court must determine whether that question of CBA interpretation was ever a subject of arbitration.
This Court's "authority to review the merits of an arbitration award is very limited." R.I. Brotherhood of Correctional Officers v. StateDept. of Corrections, 707 *Page 11 A.2d 1229, 1234 (R.I. 1998) (citations omitted). "Only in cases in which an award is so tainted by impropriety or irrationality that the integrity of the process is compromised should courts intervene. This policy of finality is reflected in the limited grounds that the Legislature has delineated for vacating an arbitration award."Prudential Prop. Casualty Ins. Co. v. Flynn, 687 A.2d 440, 441 (R.I.1996) (citing Aetna Casualty Surety, Co. v. Grabbert, 590 A.2d 88, 92(R.I. 1991)).
Rhode Island General Laws § 28-9-18 specifies the grounds upon which labor arbitration awards may be vacated:
 (a) In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award0 upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13.
(Emphasis added). In interpreting § 28-9-18(a)(2), the Rhode Island Supreme Court stated: "[a]n arbitrator exceeds his or her powers `by resolving a non-arbitrable dispute or if the award fails to draw its essence from the agreement, if it was not based upon a `passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result. . . .'"City of East Providence v. USW Local 15509, 925 A.2d 246, 252 (R.I. 2007) (quoting Woonsocket Teachers' Guild, Local 951, AFT v. WoonsocketSchool Committee, 770 A.2d 834, 837 (R.I. 2001) (quoting State Dep't ofChildren, Youth Families v. R.I. Council 94, 713 A.2d 1250, 1253 (R.I. 1998)). *Page 12 
To determine whether an arbitration award is in excess of the arbitrator's power by deciding an issue beyond the substantive issues submitted by the parties, the inquiry of a court "focuses on whether the arbitrator had the power, based on the parties' submission orarbitration agreement, to reach certain issues, not whether arbitrators correctly decided those matters." 3 Thomas H. Ohmke, CommercialArbitration, § 146:1(3rd ed. 2007) (emphasis added) (discussing 9 U.S.C.S. § 10(4) which is mirrored by R.I.G.L. § 28-9-18(a)(2)); see Mantle v. Upper Deck Co., 956 F. Supp. 719 (N.D. Tex. 1997). "Defining the scope of the Arbitrator's authority begins with the parties' contract documents and extends beyond to the arbitration process (i.e., administrative conferences, preliminary hearing, post-hearing briefing stage) if the parties have includedadditional issues for the arbitrator's determination." Id. § 146:2 (emphasis added). Although this treatise passage concernsexpanding the scope of arbitrable issues, its logic also applies where there has been a broad submission to arbitration. In such a case, the issues litigated before an arbitrator are defined and focused by the evidence, submissions and requests for relief of the parties before and during the hearing.
The second ground for vacating an arbitration award found in § 28-9-18(a)(2) — "that a mutual, final, and definite award upon the subject matter submitted was not made" — permits relief where "the award itself [in the sense of a judgment, order or final decision] is incomplete by leaving unresolved a portion of the dispute that was supposed to have been decided." Id. § 147:1. The terms mutual andfinal mean that the arbitrator must resolve the entire dispute that was submitted. Fradella v. Petricca, 183 F.3d 17, 19 (1st Cir. 1999). *Page 13 
Although not the subject of R.I.G.L. § 28-9-18, [5] an award may be vacated if the arbitrator denies a party a meaningful opportunity to argue or present evidence on an issue decided, because doing so fundamentally undermines the propriety of the proceeding. HotelesCondado Beach, La Concha Convention Center v. Union deTronquistas, 763 F.2d 34, 39 (1st Cir. 1985) ("The arbitrator is not bound to hear all of the evidence tendered by the parties; however, he must give each of the parties to the dispute an adequate opportunity to present its evidence and arguments." See alsoNat'l Post Office Mailhandlers v. United States Postal Serv.,751 F.2d 834, 841 (6th Cir. 1985) ("Arbitrators are not bound by formal rules of procedure and evidence, and the standard for judicial review of arbitration procedures is merely whether a party to arbitration has been denied a fundamentally fair hearing").[6] "As long as the objecting party has ample opportunity to present evidence, then there is no abuse on the arbitrator's part." City of Central Fallsv. Central Falls Fire Fighters, Local 1485, 2002 R.I. Super. LEXIS 131 at 7 (R.I.Super. 2002) (citing Taylor et. al v. Delta Electric Power,Inc., 741 A.2d 265, 267 (R.I. 1999) (refusing to vacate under § 10-3-12(3) because the parties were given ample *Page 14 
opportunity to argue and present evidence).[7] Where an arbitrator decides an issue on which one of the parties was not provided an opportunity to present argument or evidence, the ultimate ruling takes on the character of an amendment to the CBA instead of an interpretation of contract. See State of R.I. v. R.I. Employment SecurityAlliance, 840 A.2d 1093, 1096 (R.I. 2003) ("Amendment by interpretation effectively usurps the role of the labor organization and the employer in the collective bargaining process.") (citations omitted).
 V. Analysis
The CBA at issue here submits disputes to arbitration "arising out of the provisions of this contract relating to the application orinterpretation thereof." CBA at 56. Thus, disagreements over an interpretation of the CBA are arbitrable disputes. In this case, the parties stipulated to place the following issue before the Arbitrator for decision:
 Did the Rhode Island Department of Health violate the collective bargaining agreement when it selected Patricia Linehan for the post of Senior Nursing Care Evaluator? If so, what shall be the remedy.
Stipulated Submission to Arbitration. This submission is so broad that it could encapsulate the issue of whether the CBA should be interpreted to determine the weight to be assigned to each qualification for promotion. Yet, the actual scope of the subject *Page 15 
arbitration was defined by the evidence and arguments put forth by the parties at the arbitration hearing.
At no time before or during arbitration was the Arbitrator presented with the issue of contract interpretation ultimately decided by him — namely, the weight to be afforded the three promotional criteria under the CBA. The actual issue litigated at arbitration was the role that seniority should play in promotional determinations. Although the parties submitted to the Arbitrator Article X of the CBA (which lists education, experience and an interview as the three criteria for promotion) and the Department's scoring sheet, these documents are relevant not only to an issue of contract interpretation involving the selection criteria but also to the role of seniority in any promotional decision. The documents thus fail to suggest that the parties had put in issue any question of contract interpretation involving the weight to be assigned the three promotional criteria.
In fact, it was not until the Union filed its post-arbitration brief that it first raised this issue of contract interpretation. While the Union attempts to suggest that it raised that issue during the grievance proceedings, as evidenced by the hearing officer's decision on the Level 3 grievance, there is nothing in the record of grievances, that decision or the record of the arbitration hearing to suggest that this issue of contract interpretation — as opposed to the question of the fairness of the scoring procedure or the role of seniority in the promotional decision — was grieved or arbitrated.
Even after the Union filed its post-arbitration brief and raised this issue of contract interpretation for the first time, the Department was denied any meaningful opportunity to respond to it. While it moved to reopen the arbitration hearing to present evidence and legal argument regarding the issue of the appropriate weight to be assigned *Page 16 
to the promotional criteria under the CBA, the Arbitrator denied its motion. As a result, the Department was deprived of any chance to argue the intent of the parties in outlining the selection criteria in the contract and to present evidence of the Department's past practice in weighing those criteria in making promotional decisions.
Where an arbitration submission is extremely broad, the only logical way to determine the issues before the arbitrator is to look at the evidence and legal arguments that the parties presented. The introduction of a specific contract-based claim for relief must come before the filing of simultaneous post-arbitration briefs or the hearing must be reopened to allow the opposing party an opportunity to respond to such a claim for relief through the presentation of evidence and legal argument. See Generica v. Pharmaceutical Basics, 125 F.3d 1123,1130 (7th Cir. 1997) ("An arbitrator must provide a fundamentally fair hearing . . . one that meets the minimal requirements of fairness — adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. . . .").[8]
Thus, because the only issue properly before the Arbitrator here was the role that seniority would play in the promotional decision making process, "the [A]rbitrator exceeded [his] powers" by interpreting the CBA to determine the weight to be afforded the selection criteria. § 28-9-18(a)(2). Moreover, the denial of an opportunity for the Department to present evidence and legal argument concerning this issue of contract interpretation tainted the proceeding with impropriety and unfairness to such an extent that the Arbitration Award must be vacated.See Aetna Casualty Surety Co. v. Grabbert, 590 A.2d at 92. *Page 17 
To rule otherwise would require the Department to speculate as to all of the Union's potential arguments for breach of a 74-page collective bargaining agreement and then enter evidence and legal authority to counter those arguments, regardless of whether that evidence was proffered or those arguments were advanced by the Union before or during the arbitration hearing. Judicial endorsement of such a method of defining the issues at arbitration — which also would deny litigants like the Department an opportunity to respond to an adversary's new claim for relief first posited in a post-arbitration brief — would be to sanction an unfair hearing process that could undermine the public's faith in arbitration. See Aetna Casualty Surety Co. v. Grabbert,590 A.2d at 92 ("No matter how desirable the finality of an arbitration award may be, it is more important that an award be rendered free from any improprieties that affect the award and that could destroy public confidence in and the integrity of the arbitration process"). As the Court stated in Cortlandt v. Underhill, 17 Johns 405, 411 (N.Y. Ct. Errors 1819);
 [T]o uphold and maintain the awards of arbitrators, when they are guilty of such gross and scandalous misbehavior as to refuse to hear material evidence, would . . . produce a universal dread of that mode of adjusting differences. Independently of what is due to individual justice, it would be an alarming doctrine to hold that there can be no relief against an award, even if the arbitrators outrage every principle of justice in refusing to hear the proofs of one of the parties.
Furthermore, because the Arbitrator in this case interpreted the CBA provision concerning the criteria for promotions without providing the Department with an opportunity to present its case, the ruling could be viewed as an improper amendment to the contract instead of an interpretation of it. See R.I. Employment Security Alliance,840 A.2d at 1096 ("Amendment by interpretation effectively usurps the role of the labor organization and employer in the collective-bargaining process"). In this proceeding, the *Page 18 
contract is silent as to the weight to be assigned the three selection criteria. It must be deemed, therefore, to be ambiguous in this regard. However, by construing the contract to assign equal weight to those criteria, without allowing the parties to present extrinsic evidence and argument as to their intent in drafting the contract or their custom and practice in implementing it, the Arbitrator effectively added a term to the contract to which at least one party did not consent.
This flaw in the arbitration process seems even more egregious because it was not necessary for the Arbitrator to reach this issue of contract interpretation; as the dicta in the decision makes clear, Linehan would have been entitled to her promotion regardless of whether the contract were interpreted in the manner advocated by the Arbitrator. Such a flaw contravenes the reasoning in R.I. Employment Security Alliance and is contrary to the CBA itself. See CBA Art. XXXV "Alteration of Agreement" ("any alteration or modification of this agreement shall be binding on the parties hereto only if executed in writing and mutually agreed to by the parties").[9]
Finally, the Arbitrator failed to include in the Arbitration Award his ruling with respect to the issue that the parties had properly submitted to arbitration and which was included in the body of his decision — namely, the role that seniority would play in the selection process. He thus failed to make a definitive award as to those matters that were properly submitted to him.
This Court finds, therefore, that the Arbitrator "exceeded his power, or so imperfectly executed [it], that a mutual, final and definite award upon the subject matter *Page 19 
was not made." § 28-9-18(a)(2). Under § 28-9-18(a)(2), therefore, the Arbitration Award must be vacated.
 VI. The Remedy
The only remaining question, therefore, is whether this Court simply should grant the Department's petition to vacate or whether, instead, the matter ought to be remanded for the taking of further evidence and argument at arbitration as to the question of contract interpretation. The Department asks that the Arbitration Award be vacated or, alternatively, that the case be remanded to arbitration to allow it to submit evidence and argument regarding the issue of contract interpretation that the Arbitrator decided improperly.
Reversing the decision of the Arbitrator and remanding this case for further hearing (either before the same or a different arbitrator) would have the benefit of resolving an issue of contract interpretation that may continue to raise its head with respect to future promotional decisions under the CBA. See § 28-9-19 ("Where an award is vacated, the court, in its discretion, may direct a rehearing either before the same arbitrator or arbitrators or before a new arbitrator.") It would provide guidance to the Department in making future promotions and guidance to Union members in applying for these positions.
As the issue of contract interpretation was not properly raised during arbitration, however, and as it is unnecessary to resolve that issue in this case given the Arbitrator's undisputed finding that it would not change the Department's decision to promote Linehan, this Court is reluctant to order a remand that is not requested (except as an *Page 20 
alternative remedy) by either party. Instead, absent the agreement of both parties to remand, it simply will vacate and deny confirmation of the Arbitration Award.
 VII. Conclusion
For all of the reasons set forth in this Decision, the Department's petition to vacate the Arbitration Award is granted. The Union's motion to confirm the Arbitration Award is denied. The matter will not be remanded for further hearing, absent the agreement of both parties.
Counsel shall confer and submit to this Court forthwith for entry, a form of order and judgment that is consistent with this Decision.
[1] The record contains no evidence of a Level 2 grievance.
[2] The Arbitrator's Award states, in full, as follows:
 The Department of Health violated the collective bargaining agreement when it selected Patricia Linehan for the position of Senior Nursing Care Evaluator. Therefore, for all future promotions, the Department shall give equal weight to the education, experience and interview of each promotional candidate as required by Section 10.13(3) of the parties' agreement.
Arbitration Award at 14.
[3] It is unclear to this Court why the Department has not moved for modification or correction of the Arbitration Award under R.I.G.L. § 28-9-20(2). That statute specifically provides for modification: "[w]here the arbitrator or arbitrators have awarded upon a matter notsubmitted to them not affecting the merits of the decision upon the matters submitted." (emphasis added).
[4] The Department strenuously rejects this assertion and responds that the hearing officer's ruling dealt only with promotional criteria from another portion of the CBA and not the weight to be afforded education, experience and the interview in the promotional process.
[5] Compare R.I.G.L § 28-9-18 with R.I.G.L. § 10-3-12(3), allowing vacatur:
"Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in hearing legally immaterial evidence, or refusing to hear evidence pertinent and materialto the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced." (emphasis added).
Compare R.I.G.L § 28-9-18 with 9 U.S.C.S. § 10(3), allowing vacatur:
"Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or refusing to hearevidence pertinent and material to the controversy, or of any other misbehavior by which the rights of any party have been substantially prejudiced." (emphasis added).
[6] See also Totem Marine Tug Barge, Inc. v. North American Towing,Inc., 607 F.2d 649, 651 (5th Cir. 1979) ("An arbitration proceeding ismuch less formal than a trial in court . . . In handling evidence anarbitrator need not follow all the niceties observed by the federalcourts . . . He need only grant the parties a fundamentally fairhearing. All parties in an arbitration proceeding are entitled to noticeand an opportunity to be heard." (citations omitted); Bell Aerospace Co.Div'n of Textron, Inc. v. Local 516, Int'l Union, United AutomobileWorkers of America, 500 F.2d 921, 923 (2nd Cir. 1974) ("In handling evidence an arbitrator need not follow all the niceties observed by the federal courts. He need only grant the parties a fundamentally fair hearing.")
[7] See also Hart v. Kennedy, 47 N.J.Eq. 51 (Ch. 1890) ("The Parties have a right to be heard by their proofs. It is founded in natural justice."); Cortlandt v. Underhill, 17 Johns 405, 411 (N.Y. Ct. Errors 1819) ("If the Arbitrators refuse to hear evidence pertinent and material to the matter in controversy, it is unquestionably such misconduct as will vitiate an award in a court of equity . . . it would be an alarming doctrine to hold that there can be no relief against an award, even if the arbitrators outrage every principle of justice in refusing to hear the proofs of one of the parties.").
[8] See also Manchester Township Bd. of Educ. v. Carney,199 N.J. Super. 266, 274 (N.J.Super. 1984) ("There was no discretion to be exercised by the arbitrators whether to permit rebuttal testimony.").
[9] This Court leaves for another day the question of whether interpreting the contract to require the Department to assign equal weight to the promotional criteria interferes with the Department's managerial discretion and infringes upon its statutory duty to protect the public health. See Central Falls School District Board of Trusteesv. Central Falls Teacher's Union, C.A. No. PC 07-4684 August 7, 2008 (SAVAGE, J.) *Page 1