DECISION
This case is before the Court on Plaintiff Town of Johnston's motion to vacate an arbitration award in favor of the International Brotherhood of Police Officers, Local 307 ("the Union") and the Union's motion to confirm the arbitration award. For the reasons set forth herein, the Court grants the Town's motion to vacate the arbitration award and denies the Union's motion to confirm.
 FACTS
The Union is the exclusive bargaining representative for the police officers employed by the Town of Johnston Police Department. Detective Albert Faella, now retired from the Johnston Police Force, was injured on duty in an auto accident on August 13, 2006. After a panel of examining physicians determined that Detective Faella was permanently disabled as a result of his injury, the Detective sought service-connected disability retirement. A dispute arose between Detective Faella and the Town of Johnston regarding the calculation of the Detective's retirement benefits. Detective Faella filed a grievance, which the Town denied. The grievance proceeded to arbitration. After a hearing, the arbitrator rendered a signed, written decision on August 18, 2008. (Arbitration Op. 1-2.) This decision was delivered to the parties. *Page 2 
The grievance revolved around an alleged drafting error in the collective bargaining agreement ("CBA") between the Union and the Town that affected the calculation of disability retirement payments. (Arbitration Op. 3.) The relevant provision of the CBA that was then in-force reads:
 All police officers of the Johnston Police Department who are injured in the line of duty and qualify for a disability pension shall receive from the Town the difference between what is his or her pension payments and sixty-six and two-thirds (66 2/3) percent of what his or her salary was at the time of the injury.
(CBA Art. XIV, Sec. 4, emphasis added.)
However, the Union argued that the final written CBA did not reflect the actual bargain struck by the parties. (Arbitration Op. 3.) The Union presented evidence that the parties' negotiators had bargained about disability retirement benefits and had agreed that the Town would provide the difference between the disabled officer's pension payments and 66 2/3 % of the mean of the officer's three highest gross earnings years. (Arbitration Op. 3-6.) The Union's evidence consisted of testimony from two witnesses involved in the negotiation process, a copy of the tentative agreement that had been executed by the parties, and the Union's secretary's notes from the negotiations. (Arbitration Op. 3-5.) An attorney for the Town served as scrivener for the CBA. (Arbitration Op. 4-5.) The Town denied that there had been a drafting error, but did not otherwise offer evidence to rebut the Union's claim. (Arbitration Op. 3.) The Town disputed the contemporaneousness of some of the Union secretary's notes from the negotiations. (Arbitration Op. 5.) The arbitrator appears to have considered but ultimately not credited the Town's argument regarding the notes' allegedly recent provenance. (Arbitration Op. 5.)
The arbitrator found that the parties' negotiators had agreed to base the Town's financial obligation to disabled retirees on the average of the three highest gross earnings years. (Arbitration Op. 8, 10.) He further found that, due to a drafting error, the final version of the *Page 3 
CBA did not reflect the bargain struck by the parties. (Arbitration Op. 8.) The arbitrator quoted extensively from the opinions of other arbitrators to support his reasoning. (Arbitration Op. 9.) Sustaining the grievance, the arbitrator ordered the Town to recalculate Detective Faella's disability retirement benefits. (Arbitration Op. 10.)
 STANDARD OF REVIEW
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." City of East Providencev. International Association of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). Thus, the Court reviews "arbitral awards under an exceptionally deferential standard[.]" NorthProvidence School Committee v. North Providence Federation ofTeachers, Local 920, 945 A.2d 339, 347 (R.I. 2008.) Courts must vacate arbitration awards in the following circumstances:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. G.L. 1956 § 28-9-18(a).
An arbitrator exceeds his authority under § 28-9-18(a)(2) when the award does not "draw . . . its essence from the collective-bargaining contract or is not based on a pass[a]bly plausible interpretation thereof[.]" Rhode Island Brotherhood ofCorrectional Officers v. Department of Corrections,707 A.2d 1229, 1234 (R.I. 1998) (internal quotations omitted). Arbitrators may consult only appropriate sources, such as the contract between the parties and the "common law of the shop[,]" when resolving a grievance. State v. National Association ofGovernment *Page 4 Employees Local No. 79, 544 A.2d 117, 119 (R.I. 1988);Jacinto v. Egan, 120 R.I. 907, 912; 391 A.2d 1173, 1176
(1978).
The Court must vacate an arbitration award where the arbitrator manifestly disregards a contractual provision. Town of NorthProvidence v. Local 2334 International Association of FireFighters, 763 A.2d 604, 606 (R.I. 2000). Therefore, the arbitrator must read the various provisions of the collective bargaining agreement in concert with each other. Rhode IslandCouncil 94 v. State, 714 A.2d 584, 590 (R.I. 1998). The arbitrator must interpret the contract so as to give meaning to the parties' intentions in entering into the contract. Id. at 588.
Even if the arbitrator makes a mistake in interpreting the law, the Court will uphold the award. City of East Providence, 982 A.2d at 1285. However, "if the arbitrator manifestly disregard[s]" the law or arrives at an irrational result, the Court will vacate the award. Id. at 1286. A manifest disregard of the law is more than a mere error in the law or failure to understand or apply the law correctly. Id. "Rather, a manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it."Id. (internal quotations omitted.) An arbitrator's factual findings are reviewable only when they are "completely irrational."Belanger v. Matteson, 115 R.I. 332, 356; 346 A.2d 124, 138
(1975).
Section 28-9-16, the statute governing the enforceability of arbitration awards, states:
 To entitle the award to be enforced, as prescribed in this chapter, it must be in writing, within the time limited in the submission or contract, if any, subscribed by the arbitrator or arbitrators making it, and either filed in the office of the clerk of the court having jurisdiction as provided in § 28-9-14 or delivered to one of the parties or his or her attorney.
Upon timely application, the Court must confirm any arbitration award that meets the criteria in § 28-9-16, is otherwise enforceable, and has not been "vacated, modified, or corrected." Sections 28-9-13,-16 to-17. *Page 5 
 ANALYSIS
The Town argues that the Court should vacate the arbitration award because the award contravenes state law, embodies a manifest disregard for the clear language of the contract, and is irrational.
The Town first posits that the award, which requires the Town to use the mean of Detective Faella's three best years of earnings to calculate his disability retirement benefits, violates G.L. 1956 § 45-19-19. The Town contends that this statute sets a ceiling of one hundred percent of a retiree's annual salary for disability retirement benefits. Section 45-19-19 states:
 The city or town councils of the various cities and towns may provide, by ordinance or through collective bargaining, for the retirement of the personnel of their police and fire departments who have been on leave of absence from their employment due to sickness contracted or injuries sustained in the performance of their duties; provided, that no ordinance is contrary to any pension cost of living increase or escalator clause in a collective bargaining agreement, and provided, further, that no ordinance provides for a disability retirement allowance of less than sixty-six and two-thirds percent (66 2/3%) of a retiree's annual salary at the time of retirement nor more than one hundred percent (100%) of a retiree's annual salary. (Emphasis added.)
While the first clause of this section refers to both ordinances and CBAs, the clause that sets a floor and ceiling for disability retirement benefits refers to ordinances only. Section 45-19-19. Therefore, the arbitrator's decision, which yields a disability retirement benefit of an amount greater than 100% of Detective Faella's salary at the time of his retirement, does not contravene § 45-19-19.
The Town next asserts that the arbitrator exceeded his authority under § 28-9-18(a)(2) because he manifestly disregarded the plain, unambiguous language of the CBA by considering extrinsic evidence. As a general rule, "`in situations in which the language of a contractual agreement is plain and unambiguous, its meaning should be determined without reference to *Page 6 
extrinsic facts or aids.'" National Refrigeration, Inc. v.Standen Contracting Co., 942 A.2d 968, 972 (R.I. 2008) (quotingClark-Fitzpatrick, Inc./Franki Found. Co. v. Gill,652 A.2d 440, 443 (R.I. 1994) (other quotations omitted)). In the context of labor arbitrations, our high court has repeatedly cautioned against ignoring or rewriting the plain language of the applicable CBA. See State v. Rhode Island Employment SecurityAlliance, Local 401, 840 A.2d 1093, 1096-97 (R.I. 2003);Coventry v. Turco, 574 A.2d 143, 147 (R.I. 1990) (holding that disregarding some provisions of the contract between the parties amounted to rewriting the contract.)
Here, the arbitrator ignored the express language of the contract. While the contract explicitly states that a disability pension is calculated by using "what his or her salary was at the time of the injury", (CBA Art. X1V, Sec. 4), the arbitrator chose to "reform the Agreement by replacing the salary at the time of the injury language with the best three years . . ." (Arbitration Op. 9).
In Rhode Island Employment Security Alliance, Local 401, our high court encountered a scenario similar to the instant case.840 A.2d at 1096-97. The parties negotiated a seven year employment contract which incorporated a parity letter, giving the union members the option of accepting increased wages or benefits if given to another state union without concessions. Id. at 1094-95. After the arbitrator expanded the language of the parity letter, our high court was extremely critical. Id. at 1096-97. Given the similarities between the two cases, a thorough review of the high court's analysis is helpful:
 . . .G.L.1956 § 28-9-18 sets forth several grounds upon which an arbitration award must be vacated. Specifically, § 28-9-18(a)(2) states that an award must be vacated "[w]here the arbitrator or arbitrators exceeded their powers." It is this provision with which we concern ourselves.
 It is well settled that an arbitrator exceeds his or her powers under § 28-9-18(a)(2) if the arbitration award fails to "`draw its essence' from the agreement, if it was not based upon a `passably *Page 7 
plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." State Department of Children, Youth and Families v. Rhode Island Council 94, American Federation of State, County, and Municipal Employees, AFL-CIO, 713 A.2d 1250, 1253
(R.I. 1998). As we have previously stated, "[a]lthough public policy favors the final resolution of disputes * * * by arbitration, this policy relies on the premise that arbitrators act within their power and authority." Turco, 574 A.2d at 147. When an arbitrator ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed, the arbitrator has exceeded his authority and the award will be set aside. Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 594 (R.I. 1998) (citing Elkouri Elkouri, How Arbitration Works, 482-83 (5th ed. 1997)). "[A]mendment by interpretation effectively `usurp[s] the role of the labor organization and employer' in the collective-bargaining process." Id.
Consequently, the question to be resolved in this case is whether the arbitrator's award drew its essence from the parties' agreement. We conclude that it did not.
 Our analysis is guided by long-established rules of contract interpretation. "Unless plain and unambiguous intent to the contrary is manifested, words used in contract language are assigned their ordinary meaning." Cerilli v. Newport Offshore, Ltd., 612 A.2d 35, 37-38
(R.I. 1992). A contract is ambiguous "only when it is reasonably and clearly susceptible of more than one interpretation." Rotelli v. Catanzaro, 686 A.2d 91, 94 (R.I. 1996). . . .[T]o circumvent this [express] language, the arbitrator characterized the RIPPA arbitration as a negotiation merely because "the state agreed with another union to a process that resulted in better benefits for the other union." This is an expansion of the plain language of the CBA such that it amounts to an amendment of the contract. Simply put, an arbitration proceeding is not a contract negotiation.
 Arbitration is a quasi-judicial proceeding; it is an adversary proceeding and not a negotiation; nor is an arbitration award a negotiated settlement. Western Mass. Blasting Corp. v. Metropolitan Property and Casualty Insurance Co., 783 A.2d 398, 403 (R.I. 2001). "[T]hough informal in nature, an arbitration proceeding is nonetheless a judicial, or quasi-judicial, procedure" which "presupposes a mutual agreement as to the procedures to be followed." 4 Am.Jur.2d Alternative Dispute Resolution § 180 at 207 (1995). Merely because the state and RIPPA agreed to certain concessions concerning the arbitrator's authority in that proceeding, the arbitrator in the case before us concluded that the RIPPA arbitration was a negotiation. However, both procedural *Page 8 
and substantive agreements are presupposed in arbitration proceedings. Simply by agreeing to a particular procedure upon which the arbitration will proceed, parties to arbitration do not and cannot convert an arbitration into a collective bargaining negotiation. Although the state in the RIPPA arbitration may have agreed to the procedures and substantive principles available to the arbitrator, it did not consent, in any way, to the result: the arbitration award. The CBA clearly states that Local 401's rights under the parity letter will be triggered by negotiation, not arbitration. We conclude that the arbitrator manifestly disregarded the plain meaning of the CBA and reached an irrational result. This award did not draw its essence from the CBA nor was it a passably plausible interpretation of the parity letter. Therefore the hearing justice erred in refusing to vacate the award and in confirming the award.
 Accordingly, we are of the opinion that the arbitrator exceeded his authority and the award must be vacated. We need not address the additional arguments that the parties raised. Id. (some brackets in original).
This Court is reluctant to vacate the award of an arbitrator, and often defers to the decision of the arbitrator.[1] Yet in this action, as in theRhode Island Employment Security Alliance
case cited, the arbitrator manifestly disregarded the clear contract language, attempted to rewrite or amend the contract, and in effect drafted a different contract with language in sharp contrast to the language to which the parties had assented. The language in the Johnston Police Contract is not confusing or susceptible of other interpretations. As in Turco, the arbitrator in this case exceeded his authority by rewriting the contract rather than applying its terms. See574 A.2d at 147.
The arbitrator relied on the doctrine of mutual mistake to support his decision to disregard the express language of the contract. (See Arbitration Op. 8-9.) In its memorandum, the Union quoted from a labor arbitration treatise, Elkouri Elkouri, How Arbitration Works 1229 (6th ed. 2003), to support and explain the arbitrator's conclusion that a mutual mistake *Page 9 
warranted rewriting the contract. In addition, support for the notion of judicial reformation of a contract where the parties have committed a mutual mistake such as a drafting error is found in case law. See Hopkins v. Equitable Life Assurance Society,107 R.I. 679, 684-85; 270 A.2d 915, 918 (1970) (holding that when, due to a mistake common to both parties, an insurance contract "fails in some material respect correctly to reflect [the] prior completed understanding[,]" reformation is warranted.) However, the Town disputes that the mistake was mutual; it maintains that the mistake was the Union's unilateral misunderstanding. In addition, the arbitrator found that the contract negotiators erred in describing the contract terms. It was not reasonable to presume that the signatories to the contract had made a mistake. The arbitrator did not find that the principals (the Town or the Union) or their signatory agents made such a mistake, although he found the principals bound by the contract. (Arbitration Op. 10.)
Therefore, the Court finds that the arbitrator exceeded his authority in manifestly disregarding the plain, unambiguous language of the contract. Ignoring the clear language of the contract to reach a different result is unacceptable and justifies the rare action of vacating an arbitration award. Accordingly, the Court makes the rare but warranted action of granting the Town's motion to vacate the arbitration award and denying the Union's motion to confirm the award.
 CONCLUSION
For the foregoing reasons, the Court vacates the arbitration award under § 28-9-18(a)(2). The Union's motion to confirm is denied.
[1] See, e.g. the Decision of this Court in Town ofJohnston v. International Brotherhood of Police Officers, Local307, P.C. 2008-7062, issued by the Court on the date of this Decision (confirming the decision of an arbitrator who reached an unusual, but "passably plausible," interpretation of the CBA between the Town and the Union.)