DECISION
Before the Court is the Warwick School Committee's ("School Committee") motion, pursuant to G.L. 1956 § 28-9-18, to vacate an Arbitrator's Award ("Award") issued on August 4, 2009. The Warwick Independent School Employees' Union ("Union") objects to the motion.
 I Facts Travel
In December of 2005, the position of Locksmith/Maintenance Mechanic ("Locksmith") became vacant by reason of the retirement of Richard Thomas. The School Committee posted the position and employee Brian Thomas ("Thomas" or "Grievant") — no relation to Richard — who had worked for several years in the temporary position of apprentice locksmith, successfully bid for the position.
As Thomas learned when he received his first paycheck, the posting for the locksmith position mistakenly identified the position as Classification 17 ("C-17"). Job classifications are *Page 2 
negotiated by the Union and the School Committee and dictate the rates of pay for personnel in the bargaining unit. A schedule of classifications was attached to and made a part of the Collective Bargaining Agreement ("CBA") as Appendix A. (CBA Art.VIII, ¶ D.) Apparently, the error in the posting was the product of an incorrect assumption on the part of David Small ("Small"), Director of Buildings and Grounds. It was Small who instructed the Human Resource Department clerk to post the vacant locksmith position as C-17. Admittedly, he never checked the CBA to verify the classification of the position. (Hr'g Tr. 123.)
Upon learning of the error, Thomas complained to Small and the Union. The School Department Human Resource Director acknowledged the error and offered the Union and Thomas a choice: the Department could either re-advertise the position or Thomas could remain in the position at the correct classification, which is Classification 15 ("C-15"). Thomas opted to remain as the locksmith. The Union, however, filed a grievance on his behalf, disputing his rate of pay.
The grievance made its way to arbitration. Following a hearing, the arbitrator issued a decision in which he found that the School Committee violated the CBA when it failed to pay Thomas at the rate commensurate with C-17, the classification referred to in the posting. As a remedy, the arbitrator ordered the School Committee to pay Thomas at the C-17 rate retroactive to the date he was awarded the position.
The School Committee contends that the award should be vacated because the arbitrator misinterpreted the CBA and disregarded its express language, thereby reaching an irrational result. Additionally, the School Committee argues that the award, by effectively amending the CBA as applied to Thomas, violates public policy. *Page 3 
The Union counters that the award of the arbitrator was based on a reasonable interpretation of the CBA, and thus, is entitled to the deference that courts customarily afford arbitration awards.
 II Standard of Review
"Public policy favors the finality of arbitration awards, and such awards enjoy a presumption of validity." Cityof East Providence v. Int'l Ass'n of Firefighters Local 850,982 A.2d 1281, 1285 (R.I. 2009). The Court will "overturn an arbitration award `only if the award was irrational or if the arbitrator manifestly disregarded the law.'"Id. at 1286 (quoting Purvis Systems, Inc. v. Am. SystemsCorp., 788 A.2d 1112, 1115 (R.I. 2002)). Accordingly, judicial review is statutorily limited to three specific situations:
 (1) When the award was procured by fraud.
 (2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made.
 (3) If there was no valid submission or contract, and the objection has been raised under the conditions set forth in § 28-9-13. § 23-9-18(a)
An arbitrator exceeds his power under § 28-9-18(a)(2) when "the arbitration award fails to `draw its essence' from the agreement, if it was not based upon a `passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." State v. RhodeIsland Employment Sec. Alliance, Local 401, SEIU, AFL-CIO,840 A.2d 1093, 1096 (R.I. 2003) (quoting State Dep't of Children,Youth and Families v. Rhode Island Council 94, Am. Fed'n of State,County, and Mun. Employees, AFL-CIO,713 A.2d 1250, 1253 (R.I 1998)). *Page 4 
Our highest court has held that a manifest disregard for the law is "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." North Providence School Comm. v. North ProvidenceFed'n of Teachers, Local 920, 945 A.2d 339, 347 (R.I. 2008). "A manifest disregard of the law occurs when an arbitrator understands and correctly articulates the law, but then proceeds to disregard it." Id.
The Court must "determine whether the arbitrator has resolved the grievance by considering the proper sources[,]the contract and those circumstances out of which comes the common law of the shop[,]but not to determine whether the arbitrator has resolved the grievance correctly." Jacinto v. Egan,120 R.I. 907, 912, 391 A.2d 1173, 1176 (R.I. 1978) (internal quotations omitted) (citing Gorman, LaborLaw, 585 (1976); quoting SafewayStores v. Am. Bakery Confectionery Workers Int'l Union, Local111, 390 F.2d 79, 82 (5th Cir. 1968)).
The Court is "constrained to recognize those instances in which an arbitrator reaches beyond the terms of the parties' CBA for the purpose of rendering what he or she believes is a more desirable result." Rhode Island Council 94 v. State,714 A.2d 584, 594 (R.I. 1998). Thus, "[w]hen an arbitrator ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed, the arbitrator has exceeded his authority and the award will be set aside."Rhode Island Employment Sec. Alliance,840 A.2d at 1096 (Rhode Island Council 94, 714 A.2d at 594). "Such amendment by interpretation[,] effectively usurp[s] the role of the labor organization and employer in the collective-bargaining process." Rhode Island Council 94, 714 A.2d at 594. *Page 5 
 III Discussion
The arbitrator began his analysis with an acknowledgment that the posting of the vacant locksmith position, to the extent that it described the position as falling within C-17, was erroneous as it conflicted with the express terms of the CBA. While confessing sympathy for Thomas, the arbitrator recognized that his authority is limited to "interpreting the terms of the agreement so as to effectuate the intention of the parties to the contract."Id. at 588. The arbitrator observed:
 The facts are very sympathetic to Thomas. . . . Thomas had every reason to believe he was applying for a C-17 job. Absent some contractual basis, however, I have serious doubt as to my authority to enforce general notions of fairness or equity.[1] (Arbitration Op. 14.)
Thereupon, the arbitrator endeavored to provide a contractual basis to remedy the perceived inequity to Thomas. The arbitrator concluded that the actions of the School Committee violated Article V, section H of the CBA, which states in relevant part:
 ARTICLE V
 . . . .
 H. An employee appointed to a posted vacancy shall have twenty (20) working days in which to qualify for the position and cannot be removed from said position after 20 days without progressive discipline (see Article VII. Discharge and Discipline). An employee may notify that he/she does not wish to continue in the new position and request to return to his/her previous position.
 If unable to qualify for the position, or if a request is made to return to the previous position as provided above, he/she shall be returned to the same position.
However, the above cited section of the CBA clearly has no applicability to the circumstances of this case. By its plain language, Article V, section H deals with the *Page 6 
qualifications of an employee to fill a posted vacancy. It provides what amounts to a trial period of 20 working days during which the employer — here the School Committee — may remove an employee for lack of qualifications, unconstrained by the disciplinary safeguards of the CBA. Likewise, Article V, section H affords the successful applicant the opportunity to opt out of the new position and return to his former position. With respect to Thomas, neither his qualifications nor his removal from the locksmith position were at issue in this case. Nevertheless, the arbitrator treated "Classification" — here C-17 — as synonymous with "position" — here locksmith — in an effort to manipulate the contract terms to fit the circumstances of this case. Through this manipulation, the arbitrator justified his conclusion that the School Committee ran afoul Article V of the CBA by deciding to pay Thomas the pay classification listed in the CBA, rather than be bound by the admittedly mistaken information in the posting. (Arbitration Op. 16.) In so doing, the arbitrator effectively rewrote the CBA by assigning to its language "a meaning other than that which is plainly expressed." Rhode Island Council 94,714 A2d at 594.
As noted above, the removal of Thomas from the position for which he successfully bid was never in issue, except as a postulate offered by the arbitrator in support of his contention that the actions of the School Committee implicated Article V of the CBA. The question is simply whether the School Committee is bound by the mistake in the posting for the position now occupied by Thomas.
It is undisputed that the CBA expressly provides that the locksmith position, awarded to Thomas, is paid at C-15 and that the posting indicating otherwise was a mistake. The uncontradicted evidence of record also establishes that the School Committee employees responsible for the error lacked authority to vary the terms of the CBA, specifically with respect *Page 7 
to pay classification. Certainly, a school committee cannot be bound by the actions of an agent or employee without actual authority.Providence Teachers' Union v. Providence School Bd.,689 A.2d 388, 391 (R.I. 1997) ("[Our Supreme] Court has squarely rejected the proposition that a municipality may be bound by the actions of an agent without actual authority."). To suggest that school personnel could accomplish by mistake that which they are powerless to do purposefully strikes this Court as absurd.
Also, it occurred to the Court that well-settled principles of contract law lead to the same outcome — that is, the School Committee is not contractually bound to pay Thomas in accordance with the pay classification mistakenly referred to in the posting. The doctrine of mutual mistake provides that "where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party." Restatement (Second)Contracts, § 152 (1981). Our Supreme Court has defined mutual mistake as "one that is common to both parties wherein each labors under a misconception respecting the same terms of the written agreement." Merrimack Mutual Fire Insurance Co. v. Dufault,958 A2d 620, 624 (R.I. 2008) (quoting McEntee v. Davis,861 A2d 459, 463 (R.I. 2004)). It is reasonably clear that, at the time Thomas successfully bid for the locksmith position, both he and school personnel, including Thomas' supervisor, Mr. Small, were laboring under the misconception that the correct pay classification for the subject position was C-17 and not C-15 as specified in the CBA. Under the circumstances, the School Committee, after discovering the error, acted properly in giving Thomas the option to accept the correct pay rate, or alternatively, to return to his former position. *Page 8 
In sum, the Court finds that the arbitrator exceeded his authority in the present matter. The arbitrator's result driven analysis not only assigned to the language of the CBA a meaning other than that plainly expressed, but also manifestly disregarded clear contract language specifying the pay classification for the school locksmith. R.I. Employment Security Alliance, Local401, 840 A2d at 1096; see Rhode Island Council 94,714 A.2d at 594. In doing so, the arbitrator reached an irrational result, and consequently his award is not entitled to the deference ordinarily afforded to labor arbitration awards by the courts.
 Conclusion
For the foregoing reasons, the Court grants the School Committee's motion to vacate the arbitration award under § 28-9-18(a)(2).
[1] The record reveals no evidence of detriment to Thomas apart from the fact that the posting error may have given him false hope of an increase in pay.