**Supreme Court**

Nappa Construction Management, LLC et al. :    No. 2015-211-Appeal.
    (WM 15-148)

        v.            :    No. 2015-210-Appeal.
    (WC 13-629)

Caroline Flynn et al.       :    (Dissent begins on page 12)


Caroline Flynn et al.       :

        v.            :

Nappa Construction Management, LLC et al. :


NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Nappa Construction Management, LLC et al.   :

          v.                    :

Caroline Flynn et al.         :

Caroline Flynn et al.         :

          v.                    :

Nappa Construction Management, LLC et al.   :

No. 2015-211-Appeal.
(WM 15-148)
No. 2015-210-Appeal.
(WC 13-629)
(Dissent begins on page 12)

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** Caroline Flynn and Vincent Flynn (the Flynns) appeal from a Superior Court order denying their motion to vacate an arbitration award and granting a joint application of Nappa Construction Management, LLC (Nappa) and Service Insurance Company, Inc. (Service Insurance) to confirm the award. The Flynns also appeal from a correlative judgment in favor of Nappa and Service Insurance. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we reverse the order of the Superior Court and vacate the judgment.

- 1 -

# I

## Facts and Procedural History

On September 18, 2012, Nappa and the Flynns entered into an American Institute of Architects form of contract (A101-2007 Standard Form of Agreement Between Owner and Contractor) for a commercial construction project (the AIA contract). Nappa was engaged to construct an automobile repair facility in Narragansett for $360,000 (the project). Service Insurance furnished a performance bond on the project. The contract between Nappa and the Flynns provided that the owner, i.e., the Flynns, could terminate the contract for cause, and they could also order Nappa in writing to suspend, delay, or interrupt the work without cause "for such period of time as the [o]wner may determine." Further, § 14.4 of the contract allowed the Flynns to terminate the contract for convenience and without cause.[1] The arbitrator found that "[w]ork commenced on the project in late December 2012" and that it "proceeded in a somewhat

---

[1] Section 14.4 of the American Institute of Architects (A201-2007) contract stated,
> "§ 14.4.1 The [o]wner may, at any time, terminate the [c]ontract for the [o]wner's convenience and without cause.
> "§ 14.4.2 Upon receipt of written notice from the [o]wner of such termination for the [o]wner's convenience, the [c]ontractor shall
> .1 cease operations as directed by the [o]wner in the notice;
> .2 take actions necessary, or that the [o]wner may direct, for the protection and preservation of the [w]ork; and
> .3 except for [w]ork directed to be performed prior to the effective date of termination stated in the notice, terminate all existing subcontracts and purchase orders and enter into no further subcontracts and purchase orders.
> "§ 14.4.3 In case of such termination for the [o]wner's convenience, the [c]ontractor shall be entitled to receive payment for [w]ork executed, and costs incurred by reason of such termination, along with reasonable overhead and profit on the [w]ork not executed."

desultory manner throughout the winter of 2012-2013, not without complaints at the pace of construction by [the] Flynn[s]."

On June 24, 2013, the Flynns directed Nappa "to immediately cease from any further work on the project," stating that the "project [was] not being constructed according to the building plans * * * nor according to industry standards." This directive was conveyed in a letter from the Flynns' counsel to Nappa's counsel and specified the foundation and the cement flooring as the evidence of the alleged noncompliance. Thereafter, Nappa submitted an application for payment, including expenses for the disputed flooring, which the Flynns declined to pay. Accordingly, on July 29, 2013, Nappa notified the Flynns that they were in breach of the contract, and it filed for mediation. On September 4, 2013, Nappa terminated the contract due to nonpayment. The Flynns then filed an action in Superior Court alleging that Nappa had wrongfully terminated the contract.[2] In accordance with § 6.2 of the contract, which required that all disputes be resolved through arbitration, Nappa filed a demand for arbitration. In that demand, Nappa also named Service Insurance as a party to the arbitration pursuant to G.L. 1956 § 10-3-21.[3] The demand for arbitration specified the nature of the dispute as "[b]reach of [c]ontract, [i]mproper stoppage of work by owner, failure to make payment, [and] resolution of

---

[2] The complaint filed by the Flynns also named Malloy Properties, LLC, the owner of the property, as a plaintiff and the following parties as defendants: Service Insurance, the bonding company; Mohamed H. Hussein, P.E., an engineer on the project; Independence Bank, a financial institution that provided financing for the project; and Albert E. DeRobbio, an independent engineer hired by the bank to certify the construction work.

[3] General Laws 1956 § 10-3-21 provides in relevant part:

> "(a) If a contractor principal on a bond furnished to guarantee performance or payment on a construction contract and the claimant[s] are parties to a written contract with a provision to submit to arbitration any controversy thereafter arising under the contract, the arbitration provisions shall apply to the surety for all disputes involving questions of the claimant's right of recovery against the surety."

- 3 -

* * * performance bond claim."[4] The Flynns responded by denying each allegation against them and counterclaiming against Nappa and Service Insurance for "damages arising out of breach of contract and negligence in the performance of their duties * * *."

The matter proceeded to arbitration; and, on March 13, 2015, the arbitrator issued his award, finding, inter alia, that "[t]here [was] considerable fault to be found with both [p]arties." He concluded that, although "[t]here were indeed problems with the cement floor that would require substantial remediation[,]" the stop-work order issued by the Flynns "was not a satisfactory way to address these problems, and only served to exacerbate the deteriorating situation." The arbitrator also found that Nappa "failed to act in the best interest of the project" by submitting a payment application which included sums for the cement flooring, "while at the same time acknowledging that [sic] floor to be deficient." Accordingly, he found that "Nappa was not justified in declaring [the] Flynn[s] in breach of contract, and terminating the [c]ontract for failure to pay Nappa's [p]ayment [a]pplication * * *."

Having found that Nappa was "not justified" in terminating the contract, the arbitrator then went on to invoke the termination-for-convenience clause, stating:

> "At the same time, it seems obvious that the combative, contentious, dysfunctional relationship between [the] Flynn[s] and Nappa had to be brought to a conclusion. The most practical method to accomplish that end, I have determined, is to consider the [c]ontract to have been terminated according to Para. § 14.4 of the [g]eneral conditions; TERMINATION BY THE OWNER FOR CONVENIENCE: Under this interpretation, neither Nappa nor [the] Flynn[s] [are] in breach of the [c]ontract; and the contractor is entitled to the best measure of the fair and reasonable value of the work done."

Finally, the arbitrator calculated payments due to Nappa, including overhead and profit for work not executed, from which he offset the cost to remediate the defective floor slab and

---

[4] The question before the arbitrator regarding the bond is not at issue on appeal.

certain back charges properly payable by Nappa, and he awarded Nappa the sum of $37,979.97. Nappa and Service Insurance then filed a petition in Superior Court to confirm the arbitrator's award. The Flynns countered by filing a motion to vacate the arbitration award, asserting that the arbitrator exceeded the scope of his powers and manifestly disregarded a contractual provision by holding that the contract was terminated for convenience pursuant to § 14.4 of the contract. In response, Nappa argued that the arbitrator did not exceed his powers or manifestly disregard a contractual provision because the contract included a broad arbitration provision and because a court can judicially convert a "termination for cause" into a "termination for convenience" when both clauses appear in the contract.

On May 8, 2015, the hearing justice denied the Flynns' motion to vacate and granted Nappa's petition to confirm the arbitration award. She reasoned, "the arbitrator unmistakably attempted to ground his analysis in the contract itself citing various provisions of the contract," which showed that the arbitrator "administered his duties as an arbitrator with all due regard to the contract and the ability to terminate the contract under its terms." The hearing justice also held that the arbitrator did not exceed his power in "determining that it was a termination for * * * convenience as opposed to [a] termination for cause * * *."

The hearing justice also held that the Flynns had not met their burden in demonstrating a manifest disregard for the law as no evidence had been put forth establishing "that the arbitrator knew what the law was and purposefully disregarded it." The Superior Court concluded by explaining that there is a strong policy in favor of the finality of an arbitrator's award and determined that the Flynns' negligence claim was sufficiently addressed by the arbitrator in the catchall statement at the end of the arbitrator's award, which stated, "[a]ll claims not expressly

- 5 -

granted are hereby denied." Final judgment entered on May 29, 2015, and the Flynns filed a timely notice of appeal.[5]

## II

## Standard of Review

"In this jurisdiction, the authority of the Courts 'to review an arbitral award is statutorily prescribed and is limited in nature.'" Buttie v. Norfolk & Dedham Mutual Fire Insurance Co., 995 A.2d 546, 549 (R.I. 2010) (quoting North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)). "[J]udicial reversal of an arbitrator's award solely on the ground of a reviewing court's disagreement with [the arbitrator's] construction of the contract is prohibited." Id. (quoting Council 94, American Federation of State, County, and Municipal Employees AFL-CIO v. State, 475 A.2d 200, 203 (R.I. 1984)). This standard of review requires "something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law." Purvis Systems, Inc. v. American Systems Corp., 788 A.2d 1112, 1115 (R.I. 2002) (quoting Westminster Construction Corp. v. PPG Industries, Inc., 119 R.I. 205, 211, 376 A.2d 708, 711 (1977)).

Notwithstanding this deferential standard of review, a court must vacate an arbitrator's award "[w]here the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made." State Department of Corrections v. Brotherhood of Correctional Officers, 867 A.2d 823, 828 n. 2 (R.I. 2005) (quoting G.L. 1956 § 28-9-18). "It is well settled that an arbitrator exceeds his or her

---

[5] It does not appear from the record that Malloy Properties, LLC was ever a party to the arbitration or to the subsequent proceedings in Superior Court.

powers under § 28-9-18(a)(2)[6] if the arbitration award fails to 'draw its essence from the agreement, if it was not based upon a passably plausible interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result.'" State v. Rhode Island Employment Security Alliance, Local 401, SEIU, AFL-CIO, 840 A.2d 1093, 1096 (R.I. 2003) (Employment Security Alliance) (quoting State Department of Children, Youth and Families v. Rhode Island Council 94, American Federation of State, County, and Municipal Employees, AFL-CIO, 713 A.2d 1250, 1253 (R.I. 1998)).

> "Clearly an arbitrator's broad authority to interpret the agreement between the parties and fashion an appropriate remedy is not unbridled. His or her authority is contractual in nature and is limited to the powers conferred in the parties' [contractual agreement]. The arbitrator is confined to interpret the terms of the agreement so as to effectuate the intentions of the parties to the contract." Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998) (Council 94).

"When an arbitrator ignores clear-cut contractual language or assigns to that language a meaning that is other than that which is plainly expressed, the arbitrator has exceeded his authority and the award will be set aside." Employment Security Alliance, 840 A.2d at 1096 (citing Council 94, 714 A.2d at 594).

---

[6] General Laws 1956 § 28-9-18(a) states in pertinent part:
    "In any of the following cases the court must make an order vacating the award, upon the application of any party to the controversy which was arbitrated:
        "* * *
        "(2) Where the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made."

# III

## Discussion

### A

### The Arbitrator Exceeded His Authority

It has long been recognized in this state that judicial review of arbitration awards is extremely limited. See Berkshire Wilton Partners, LLC v. Bilray Demolition Co., 91 A.3d 830, 835 (R.I. 2014). This Court has often noted that "Rhode Island has a strong public policy in favor of the finality of arbitration awards." Id. at 834. We have recognized that parties may "voluntarily contract to use arbitration as an expeditious and informal means of private dispute resolution, thereby avoiding litigation in the courts," id. (quoting Aetna Casualty & Surety Co. v. Grabbert, 590 A.2d 88, 92 (R.I. 1991)) and that "[p]arties who have contractually agreed to accept arbitration as binding are not allowed to circumvent an award by coming to the courts and arguing that the arbitrators misconstrued the contract or misapplied the law." Id. at 835 (quoting Prudential Property and Casualty Insurance Co. v. Flynn, 687 A.2d 440, 441 (R.I. 1996)).

An arbitrator may misconstrue a contract; however, he may not manifestly disregard a contractual term or ignore "clear-cut contractual language." Employment Security Alliance, 840 A.2d at 1096. Section 10-3-12(4) mandates that an award be vacated "[w]here the arbitrator[] exceeded [his] powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." We have further held that "[a]n arbitrator may exceed his or her authority by giving an interpretation that fails to draw its essence from the parties' agreement, is not passably plausible, reaches an irrational result, or manifestly disregards a provision of the agreement." Berkshire Wilton Partners, LLC, 91 A.3d at 835. In the case now before us, we conclude that the arbitrator exceeded his authority.

The arbitrator began his decision by reciting the history of the relationship between the parties, concluding that "[t]here [was] considerable fault to be found with both [p]arties." Although he found that there were indeed problems with the cement floor that would require a substantial remediation, he characterized the stop-work order issued by the Flynns as "not a satisfactory way to address these problems," and he said that it "practically guaranteed the project would end in acrimony." He did not find that it constituted a breach of contract, however, nor could he, in light of § 14.3.1 of the contract, which provides that "[t]he [o]wner may, without cause, order the [c]ontractor in writing to suspend, delay or interrupt the [w]ork in whole or in part for such period of time as the [o]wner may determine."

The arbitrator then determined that "Nappa was not justified in declaring [the] Flynn[s] in breach of contract, and terminating the [c]ontract for failure to pay Nappa's [p]ayment [a]pplication No. 4." Having found that Nappa had improperly terminated the contract, however, he took it upon himself to end the parties' "combative, contentious, dysfunctional relationship" by employing the fiction that the Flynns had terminated the contract "for convenience" under § 14.4 of the agreement. As the arbitrator noted, under this interpretation, neither party was deemed to be in breach of the contract.

Section 14.4.1 of the parties' contract provided that "[t]he [o]wner may, at any time, terminate the [c]ontract for the [o]wner's convenience and without cause." Under § 14.4.2, the owner must provide written notice of such termination to the contractor, at which point the contractor shall "cease operations as directed by the [o]wner in the notice." In the case under review, there is no evidence that the Flynns ever notified Nappa in writing that they wished to terminate the contract nor did the arbitrator so find. Indeed, the letter of June 24, 2013, to Nappa's counsel states that Nappa was "to immediately cease from any further work on [the]

project" "until the [specified] issues [were] resolved." This was followed by a letter dated June 27, 2013, directing that "[u]nder no circumstances [was] Nappa * * * authorized to proceed with pouring the final flooring until the design engineer * * * certifie[d] that the existing flooring [was] in compliance with his plans." This language speaks to an ongoing relationship between the parties, albeit one in which Nappa must address an alleged deficiency in its performance. It does not, however, indicate a desire by the Flynns to terminate the contract for convenience.

Under the parties' agreement, a termination for convenience may be exercised only by the Flynns and completely in their discretion. By employing this contractual provision to resolve the parties' contractual dispute, the arbitrator has interpreted the contract in a manner that fails to draw its essence from the parties' agreement and manifestly disregards a provision of the agreement. Indeed, the arbitrator's interpretation is in direct contravention of the contractual language.

Where an arbitrator's decision conflicts with the express terms of the agreement, it fails to draw from the essence of the agreement. See, e.g., Wyandot, Inc. v. Local 227, United Food and Commercial Workers Union, 205 F.3d 922, 929 (6th Cir. 2000) (although an arbitrator "may construe ambiguous contract language, he is without authority to disregard or modify plain and unambiguous provisions") (quoting Dobbs, Inc. v. Local 614, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, 813 F.2d 85, 86 (6th Cir. 1987)); Excel Corp. v. United Food and Commercial Workers International Union, Local 431, 102 F.3d 1464, 1468 (8th Cir. 1996) ("Although an arbitrator's award is given great deference by a reviewing court, the arbitrator is not free to ignore or abandon the plain language of the [collective-bargaining agreement], which would in effect amend or alter the agreement without authority"); Council 94, 714 A.2d at 589 ("[the arbitrator] does not sit to dispense his own brand

of industrial justice[,] * * * his award is legitimate only so long as it draws its essence from the collective bargaining agreement") (quoting United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597 (1960)).

Moreover, the arbitral award in this case reaches an irrational result in that it contradicts the arbitrator's factual findings. The arbitrator specifically found that the issuance of the "stop-work order" by the Flynns "was not a satisfactory way to address [their] problems" with the concrete flooring. He did not find, however, that the Flynns had breached the contract. Also, the arbitrator found that Nappa was not justified in terminating the contract; yet his ultimate award was predicated upon an interpretation under which Nappa was not considered to be in breach of contract. Having effectively found Nappa to be in breach of contract, rather than determining damages, the arbitrator essentially converted Nappa's wrongful termination into a termination for convenience, which under the contract was a right exercisable only by the Flynns. The arbitrator never made a finding, nor was there any evidence submitted, that the Flynns had ever sought to terminate the contract; clearly they had never provided Nappa with written notice of a termination for convenience as required by the contract. The arbitrator's conclusions, therefore, are in discord with his factual findings.

Judicial review of an arbitration award is extremely limited. This is so because we recognize that the parties to a contract with an arbitration clause have bargained for an arbitrator to resolve their disputes rather than the courts. See Purvis Systems, Inc., 788 A.2d at 1118. An arbitrator's authority, however, is not unfettered; it is rather circumscribed by the plain language of the parties' contract. See Council 94, 714 A.2d at 588. As we have noted before, "[w]e do not by this opinion endeavor to replace the arbitrator's interpretation of the [contract] with our own. Rather we are constrained to recognize those instances in which an arbitrator reaches beyond the

terms of the parties' [contract] for the purpose of rendering what he or she believes is a more desirable result." Id. at 594.

## IV

## Conclusion

For the reasons stated herein, we vacate the judgment of the Superior Court and reverse the order granting the joint application of Nappa and Service Insurance to confirm the arbitration award and denying the Flynns' motion to vacate. We remand the record to the Superior Court with directions to grant the Flynns' motion to vacate and for further proceedings consistent with this opinion.

**Justice Indeglia, with whom Justice Flaherty joins, dissenting.** While we agree with much of the majority's analysis of the matter, we nevertheless respectfully voice our dissent to its ultimate conclusion that the arbitrator manifestly disregarded the law in interpreting the contract. The jurisprudence in this area is firmly settled. We have continuously afforded great deference to an arbitrator's decision. Indeed, as the majority has correctly articulated, our authority "to review an arbitral award is statutorily prescribed and is limited in nature." Buttie v. Norfolk & Dedham Mutual Fire Insurance Co., 995 A.2d 546, 549 (R.I. 2010) (quoting North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers, 945 A.2d 339, 344 (R.I. 2008)). See also, e.g., United Paperworkers International Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36 (1987) ("[T]he courts play only a limited role when asked to review the decision of an arbitrator."); United Steelworkers of America v. American Manufacturing Co., 363 U.S. 564, 567-68 (1960) ("The function of the court is very limited when the parties have agreed to submit all questions of contract

interpretation to the arbitrator."); United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."); United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574 (1960). Nonetheless, a court must vacate an arbitrator's award "[w]here the arbitrator or arbitrators exceeded their powers, or so imperfectly executed them, that a mutual, final, and definite award upon the subject matter submitted was not made * * * ." State Department of Corrections v. Rhode Island Brotherhood of Correctional Officers, 115 A.3d 924, 928 (R.I. 2015) (quoting G.L. 1956 § 28-9-18(a)(2)).

In deciding whether to vacate an arbitrator's award, the Court must weigh whether the arbitrator exceeded his or her powers "by resolving a non-arbitrable dispute or if the award fails to 'draw its essence' from the [contract], if it was not based upon a 'passably plausible' interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result." City of East Providence v. United Steelworkers of America, Local 15509, 925 A.2d 246, 252 (R.I. 2007) (quoting Woonsocket Teachers' Guild, Local 951, AFT v. Woonsocket School Committee, 770 A.2d 834, 837 (R.I. 2001)). Here, the arbitrator was faced with a situation where "[t]here [was] considerable fault to be found with both [p]arties" and he recognized that "the combative, contentious, dysfunctional relationship between Flynn and Nappa had to be brought to a conclusion." In the arbitrator's effort to issue a fair and reasonable award, he determined that neither party breached the contract, but that the contract had been terminated through the provision allowing for termination by the owner for convenience. The arbitrator issued an award that he believed to be fair, within his authority under the contract, and

consistent with this Court's prior holdings. In our opinion, under no circumstances can the arbitrator's award be considered in excess of the terms of the parties' contract, a manifest disregard of the law in its interpretation, or an irrational result.

The majority relies on Rhode Island Council 94, AFSCME, AFL-CIO v. State, 714 A.2d 584, 588 (R.I. 1998), for the propositions that an arbitrator's authority "is contractual in nature and is limited to the powers conferred in the parties' [contract]" and that "[an] arbitrator is confined to interpret the terms of the agreement so as to effectuate the intentions of the parties to the contract." Here, however, a review of the contract as a whole reveals that the arbitrator's award did not exceed the language of the agreement because, although the arbitrator could not find a termination for cause, a termination for convenience effectively had taken place. This Court has repeatedly recognized that "[a]n arbitrator has a duty to resolve a dispute based on the relevant provisions in the [contract]." State Department of Corrections, 115 A.3d at 931 (quoting Woonsocket Teachers' Guild, Local 951, AFT, 770 A.2d at 839). It is clear that the arbitrator resolved the dispute based on a provision within the contract and did not expand its plain language. As can be easily determined from the parties' submission to arbitration, each sought that the controversy be resolved through the award of money damages. That is precisely what the arbitrator did.

In sum, arbitral awards are reviewed under an "exceptionally deferential standard as a means of ensuring that parties may benefit from arbitration as a relatively informal and expedient alternative to litigation in the court system." North Providence School Committee, 945 A.2d at 347. When determining whether to vacate an arbitration award, the Court's review is "among the narrowest known in the law." State Department of Corrections, 115 A.3d at 934 (Flaherty, J., dissenting) (quoting First State Insurance Co. v. National Casualty Co., 781 F.3d 7, 9 (1st Cir.

- 14 -

2015)). While this Court "may or may not agree about how the arbitrator, who, after all, was selected by the parties, performed his duties in this case[,]" because he did not exceed his authority, his award should not be vacated. <u>Buttie</u>, 995 A.2d at 554 (Flaherty, J., concurring in part and dissenting in part). Therefore, we respectfully dissent.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Nappa Construction Management, LLC et al. v. Caroline Flynn et al.; Caroline Flynn et al. v. Nappa Construction Management, LLC et al. |
| **Case Number** | No. 2015-211-Appeal<br>(WM 15-148)<br>No. 2015-210-Appeal.<br>(WC 13-629) |
| **Date Opinion Filed** | January 23, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Kristin E. Rodgers |
| **Attorney(s) on Appeal** | For Plaintiffs:<br><br>Patrick J. Dougherty, Esq. |
| | For Defendants:<br><br>Roger N. LeBoeuf, Esq.<br>CharCretia V. Di Bartolo,  Esq.<br>Thomas W. Heald, Esq.<br>Joseph P. Carnevale, Esq.<br>Kevin F. Bowen, Esq. |