January 26, 2018

**Supreme Court**
No. 2016-53-Appeal.
(PM 14-5703)

Rhode Island Council on Postsecondary    :
Education and University of Rhode Island

v.                    :

American Association of University        :
Professors, Part-Time Faculty United, a/k/a
URI/AAUP, PTFU.

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Council on Postsecondary     :
Education and University of Rhode Island

                   v.                  :

American Association of University     :
Professors, Part-Time Faculty United, a/k/a
URI/AAUP, PTFU.

Present: Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ.

### O P I N I O N

**Chief Justice Suttell, for the Court.** The Rhode Island Council on Postsecondary Education[1] and the University of Rhode Island (collectively URI) appeal from a Superior Court judgment denying their motion to vacate an arbitration award and confirming the award. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause as to why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court in part and vacate it in part.

---

[1] The Rhode Island Council on Postsecondary Education is the successor corporation to the board of regents for education concerning postsecondary education and the board of governors for higher education. *See* G.L. 1956 § 16-59-1, as amended by P.L. 2014, ch. 145, art. 20, § 5.

# I

## Facts and Procedural History

### A

### Grievance

Kenneth Jolicoeur, the grievant, was a long-term part-time faculty member at URI and a member of the American Association of University Professors, Part-Time Faculty United (the union). Jolicoeur had routinely taught two courses per semester and served as a coordinator in the Special Programs Office since the early 1990s. Jolicoeur was assigned two courses to teach during the fall 2013 semester. In addition, he received a "Special Programs Contract" from URI by letter dated August 21, 2013, informing him that he had "been tentatively assigned to teach the following: Course and Selection: Coordinate Special Programs Information Services." Shortly thereafter, Jolicoeur received the following email from Associate Dean Kathryn Quina (Dean Quina):

> "As we noted previously, we cannot give you an additional contract for coordinating if you are teaching two courses. We worked out an arrangement with everyone this year to allow you to coordinate plus teach one course, but we are limited to two contracts. Do you wish to continue with both courses, and perhaps pick up the coordinating role in the spring * * *."

Dean Quina later explained during the grievance process that, "in compliance with the Collective Bargaining Agreement and Labor Board decision, [Jolicoeur had] been provided with the maximum of two courses for the [f]all 2013 semester * * *." Jolicoeur chose to give up the "Special Programs Contract," but he did so "under protest." Consequently, the union filed a grievance on Jolicoeur's behalf based on the rescission of his "Special Programs Contract." The

grievance proceeded through step four[2] of the grievance procedure set out in Article XIII of the Collective Bargaining Agreement (CBA), but the dispute was left unresolved.

On December 23, 2010, the board of governors for higher education[3] and the union had executed a CBA effective July 1, 2010, through June 30, 2012. The CBA was set to automatically renew every year if neither party gave notice of a modification of the CBA. The record does not indicate that either party ever gave notice. The final language contained in the CBA is the result of an interest arbitration[4] between the parties. During the interest arbitration, the union proposed the following provision to be included in the "Assignments" section of the CBA: "[a] part-time faculty assignment is normally two (2) courses per semester." URI, on the other hand, did not submit any proposed language related to either a minimum or maximum number of assignments for part-time faculty. Ultimately, the interest arbitrator rejected the union's proposed language because he found that data from URI on part-time faculty course assignments for the spring 2010 semester did not corroborate that norm.

---

[2] Step four of the CBA's grievance procedure provides:

> "If the grievance is not resolved in Step 3, it shall be submitted within five (5) working days of the President's decision to the Commissioner of Higher Education or his/her designee, as agent for the Board of Governors, who shall grant a hearing to the aggrieved and a representative of the [union] within ten (10) working days of the receipt of the written grievance. The Commissioner or his/her designee shall render written decision including reasons within **ten (10)** working days of the conclusion of the hearing."

[3] As previously mentioned, the Rhode Island Council on Postsecondary Education succeeded the board of governors for higher education. *See* § 16-59-1.

[4] When seeking to reach an agreement, interest arbitration is an alternative method to collective bargaining through which an employer and a union can submit unresolved disputes to an arbitrator. *See* Elkouri & Elkouri, *How Arbitration Works* ch. 22.1 at 22-5 (8th ed. 2016); *see also Silverman v. Major League Baseball Player Relations Committee, Inc.*, 67 F.3d 1054, 1062 (2d Cir. 1995).

**B**

**Arbitration**

The union filed a demand for arbitration on behalf of Jolicoeur on January 2, 2014, in accordance with the arbitration provision contained in Article XIII of the CBA. Section 13.4 of the arbitration provision provides that "grievances arising out of the provisions of [the CBA] relating to the application or interpretation or violation thereof may be submitted to arbitration." The union's demand for arbitration alleged that URI violated several articles of the CBA, including Article X concerning course assignments to part-time faculty members. The union sought compensation for Jolicoeur to make him whole after URI's rescission of his "Special Programs Contract" and a "rejection" of URI's imposition of a two-course part-time faculty assignment maximum.

Before the arbitrator, the union averred that the dispute was arbitrable because the CBA encompassed the rights that Jolicoeur alleged URI had infringed. The union further argued that URI's imposition of the part-time faculty assignment limitation violated the CBA. In addition, the union contended that URI violated Article III's nondiscrimination clause of the CBA when it rescinded the "Special Programs Contract." For relief, the union, on Jolicoeur's behalf, sought the salary for the rescinded "Special Programs Contract," "an order that [URI] refrain from discriminating against the grievant for his [u]nion activity," and an order that URI "cease and desist from so unilaterally imposing" such a limitation. In response, URI countered that the dispute was not substantively arbitrable because the CBA did not cover administrative assignments, such as the "Special Programs Contract." Additionally, URI argued that it did not violate the CBA when it rescinded Jolicoeur's "Special Programs Contract" nor did the union prove that it discriminated against Jolicoeur for his union activity.

On October 14, 2014, the arbitrator issued an award. Therein, the arbitrator made several findings, including: (1) Jolicoeur was not discriminated against based on his union activity; (2) the dispute was arbitrable because the parties agreed to arbitrate disputes regarding the interpretation or application of Article X, and resolution of this dispute depended on interpretation of the CBA; and (3) URI violated the CBA by limiting Jolicoeur to two assignments for the fall 2013 semester. With respect to his third finding, the arbitrator reviewed the CBA to determine whether it contained the two-course limitation imposed by URI. Specifically, he examined Article X and concluded that it set forth the criteria for URI to assign courses to part-time faculty. In addition, he found that Article I outlined the minimum requirements for part-time faculty to maintain bargaining-unit status with the union. The arbitrator also considered the union's proposal during the prior interest arbitration, which was ultimately rejected, to include language that part-time faculty are "normally" assigned two courses per semester.

After his review, the arbitrator concluded that neither Article X nor any other CBA provision imposed any limitation on part-time faculty assignments. Thus, he determined that URI's rescission of Jolicoeur's "Special Programs Contract" violated the CBA. The arbitration award required URI to pay Jolicoeur $6,500 in salary for the rescinded "Special Programs Contract" and to "cease and desist from unilaterally imposing a two (2) course per semester limit on bargaining unit employees."

# C

## Superior Court Review

On November 13, 2014, URI filed motions in the Superior Court to vacate the arbitration award and to stay the implementation of the award.[5] Before the hearing justice, URI contested the substantive and procedural arbitrability of the dispute, the award's merits, and the arbitrator's finding that the CBA did not include a two-course limitation. In challenging the award's merits, URI contended that the arbitrator's decision was "irrational" and "exceed[ed] the [a]rbitrator's authority." It further contended that the remedy was "half-baked" and went beyond the scope of the dispute set forth before the arbitrator. Moreover, URI contended that the CBA imposed a two-course-per-semester limitation that was implicitly incorporated within the term "part-time" and based on established past practices. URI's arbitrability challenge was premised upon the notion that the CBA did not cover the "Special Programs Contract" assignment because it was not a course and the CBA only contemplated courses.

The union objected to URI's motion to vacate and moved to confirm the arbitration award. A hearing was held before a Superior Court justice on URI's motion to vacate and the union's motion to confirm on September 14, 2015.[6] On October 1, 2015, the hearing justice rendered a decision that denied URI's motion to vacate the arbitration award and granted the

---

[5] On August 26, 2015, a consent order was entered by the Superior Court to stay the award's implementation pending the decision on the motion to vacate or upon further order of the Superior Court. Several conditions were imposed, including that URI make course assignments pursuant to the CBA and in accordance with Article X.

[6] We note that no transcript was ordered of this hearing.

union's motion to confirm the award.[7] The hearing justice found the dispute arbitrable because it centered on the interpretation of the CBA's provisions. The hearing justice further determined that the arbitrator's finding that the CBA did not contain any limitation on part-time faculty assignments properly "[drew] its essence from the contract and [was] based upon a passably plausible interpretation of the contract." Additionally, the hearing justice found that URI's general argument that past practices established a two-course limitation on part-time faculty lacked merit because, in order for past practices to be considered, the CBA must contain a past-practice provision.

The hearing justice's decision also included a footnote, which provided in its entirety:

> "Although the Court is affirming the holding of the Award, it notes that the arbitrator may have overreached by ordering [URI] generally to cease and desist from unilaterally imposing the two courses per semester limit on bargaining unit employees. However, the issue is not before the Court, and may not be subject to such review."

Due to confusion surrounding the footnote, URI objected to the union's proposed form of judgment, and a hearing on the objection was heard before the same justice. URI had mistakenly interpreted the footnote to mean that it had not raised the cease-and-desist issue before the hearing justice. Thus, it argued that the issue had indeed been properly raised. However, the

---

[7] Under these facts, the union moved for confirmation only in response to URI's filing of a motion to vacate the award. In Rhode Island,

> "[a]t any time within one year after the award, is made, any party to the arbitration may apply to the court for an order confirming the award, and thereupon the court must grant the order confirming the award unless the award is vacated, modified or corrected, as prescribed in §§ 10-3-12 — 10-3-14." G.L. 1956 § 10-3-11.

An order confirming an arbitration award "has the same force and effect in all respects as, and is subject to all the provisions of law relating to a judgment in an action; and it may be enforced as if it had been rendered in an action in the court in which it is entered." G.L. 1956 § 28-9-24.

hearing justice explained that he did not intend to imply that URI failed to raise the issue. Rather, the footnote was intended to convey his conclusion that, although the arbitrator "went a little wide" with his remedy, he would not disturb that remedy based on the level of deference owed to the arbitrator. The hearing justice further clarified his intentions by noting that "[p]ersonally, I think the arbitrator may have gone a little broad, but it's not up to me to determine whether or not the arbitrator was right or wrong, only whether or not they're in compliance with the confines of the statute, the contract, and the like." In light of the hearing justice's explanation of the footnote, URI conceded and retracted its objection to the entry of judgment. Final judgment was entered on November 20, 2015, confirming the arbitration award and ordering URI to pay the union costs and attorneys' fees in the amount of $16,532.48.

## D

## Appeal

On appeal, URI challenges the hearing justice's decision on four grounds: (1) the dispute was not substantively arbitrable because the "Special Programs Contract" was not governed by the CBA; (2) URI did not violate the CBA because the CBA governed part-time faculty, and the nature of part-time faculty status incorporated a limited number of assignments; (3) the arbitrator exceeded his authority by issuing a cease-and-desist order; and (4) the Superior Court's award of fees should be reversed if the judgment is vacated.

The union counters and argues that: (1) the dispute was arbitrable because its determination hinged upon the interpretation of the CBA; (2) the arbitrator's finding that URI violated the CBA by imposing a limitation on part-time faculty assignments when no limitation existed was "rational, plausible, and [drew] its essence from the CBA"; and (3) the arbitrator had

"broad remedial authority" to order URI to cease and desist from violating the CBA in the same manner, and the remedy was narrowly tailored to that finding.

## II

## Standards of Review

### A

### Arbitrability

"Whether a particular collective bargaining agreement contains clear language creating a duty to arbitrate a particular dispute is a matter for judicial determination." *Sacco v. Cranston School Department*, 53 A.3d 147, 150 (R.I. 2012) (quoting *School Committee of North Kingstown v. Crouch*, 808 A.2d 1074, 1078 (R.I. 2002)). "Because arbitrability is a question of law, we review such determinations *de novo*." *Id.* (quoting *Crouch*, 808 A.2d at 1078). In order for a dispute to properly proceed to arbitration, the parties must have agreed to submit such a dispute to arbitration. *See id.*

### B

### Review of an Arbitration Award

"In this jurisdiction, the authority of the Courts 'to review an arbitral award is statutorily prescribed and is limited in nature.'" *Buttie v. Norfolk & Dedham Mutual Fire Insurance Co.*, 995 A.2d 546, 549 (R.I. 2010) (quoting *North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers*, 945 A.2d 339, 344 (R.I. 2008)). "In reviewing an arbitrator's award, this Court, like the Superior Court, follows [G.L. 1956] § 10-3-12." *Berkshire Wilton Partners, LLC v. Bilray Demolition Co.*, 91 A.3d 830, 835 (R.I. 2014). Section 10-3-12(4) provides in pertinent part that "the court must make an order vacating the award upon the application of any party to the arbitration * * *

[w]here the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." An arbitrator exceeds his or her authority "if the arbitration award fails to 'draw its essence from the agreement, if it was not based upon a passably plausible interpretation thereof, if it manifestly disregarded a contractual provision, or if it reached an irrational result.'" *Nappa Construction Management, LLC v. Flynn*, 152 A.3d 1128, 1132 (R.I. 2017) (quoting *State v. Rhode Island Employment Security Alliance Local 401, SEIU, AFL-CIO*, 840 A.2d 1093, 1096 (R.I. 2003)).

## III

## Discussion

## A

## Arbitrability

URI argues that the dispute was not substantively arbitrable because the rescinded "Special Programs Contract" was not governed by the CBA, which only contemplates course assignments. Arbitrability is a question of law and is reviewed *de novo* by this Court. *Sacco*, 53 A.3d at 150. For a dispute to properly proceed to arbitration, the parties must have agreed to submit such a dispute to arbitration. *See id.* "Determining whether the parties agreed to submit a particular dispute to arbitration turns upon the parties' intent when they entered into the contract from which the dispute ultimately arose." *Radiation Oncology Associates, Inc. v. Roger Williams Hospital*, 899 A.2d 511, 514 (R.I. 2006).

Thus, we must examine the CBA's language to determine whether the parties agreed to arbitrate the rights of part-time faculty in URI's assignment of both academic and administrative responsibilities. "Our analysis of a CBA 'is guided by long-established rules of contract interpretation.'" *Botelho v. City of Pawtucket School Department*, 130 A.3d 172, 176 (R.I. 2016)

- 10 -

(quoting *Rhode Island Employment Security Alliance, Local 401, SEIU, AFL-CIO*, 840 A.2d at 1096). We begin our analysis by examining the CBA's express language to determine the collective intent of URI and the union to arbitrate the dispute.

Article XIII of the CBA sets forth grievance procedures for part-time faculty, such as Jolicoeur, when pursuing disputes with URI. Section 13.4 of Article XIII provides that "[o]nly grievances arising out of the provisions of this contract relating to the application or interpretation or violation thereof may be submitted to arbitration." The CBA defines a "[g]rievance" as "any difference or dispute with respect to the interpretation, application, or violation of any of the provisions of this [a]greement * * *."

We look to the CBA's specific language to determine whether this dispute involves the "interpretation, application, or violation" of one or more of the CBA provisions. This dispute involves the interpretation of the provisions contained in Article X of the CBA,[8] which sets forth the agreed-upon criteria for assigning work to part-time faculty. Article X provides that "[part-time faculty] members who have taught satisfactorily shall have the expectation of being assigned courses according to availability, qualifications and time in service." Article X further

---

[8] Article X of the CBA provides, in pertinent part:

> "Part-time faculty are hired and assigned courses based upon their qualifications including academic credentials, professional and life experience (including specialty credentials), and previous teaching experience.
>
> "At the University, [part-time faculty] members who have taught satisfactorily shall have the expectation of being assigned courses according to availability, qualifications and time in service. Courses shall be assigned to part-time faculty by the department chair, with the approval of the Dean * * *.
>
> "The department chair will consider [part-time faculty members'] course sections request[s], available course offerings, qualifications, and satisfactory past performance * * *."

- 11 -

provides that courses will be assigned to part-time faculty by the department chair, with the Dean's approval, after considering a part-time faculty member's course request in light of the availability of courses for that semester and the part-time faculty member's qualifications, time in service, and past performance. Additionally, Article I, entitled "Recognition," provides that part-time faculty must "teach[ ] a total of six (6) credits during two (2) academic years" to maintain bargaining-unit status.

"[A] court shall rule in favor of submitting the dispute to arbitration unless the arbitration clause of the collective bargaining agreement cannot be interpreted to include the asserted dispute, and * * * all doubts should be resolved in favor of arbitration." *School Committee of Pawtucket v. Pawtucket Teachers Alliance AFT Local 930*, 120 R.I. 810, 815, 390 A.2d 386, 389 (1978). Our review of the CBA convinces us that the grievance was indeed arbitrable because it concerned the criteria and procedures that governed the assignment of work to part-time faculty members and thus related to the "interpretation, application, or violation" of the CBA.

## B

### Violation of the Collective Bargaining Agreement

URI argues that "[w]hat the [hearing justice] and the [a]rbitrator failed to recognize is that the entire CBA is premised on the explicit, overriding, controlling and incorporated CBA concept that bargaining unit members are *part-time*." URI further contends that "[i]f the CBA does not, explicitly or implicitly, limit the number of courses that can be taught, it is *not* a CBA representing *part-time* faculty." Unlike this Court's *de novo* review of arbitrability, our review of an arbitrator's award "is statutorily prescribed and is limited in nature." *Buttie*, 995 A.2d at 549 (quoting *North Providence School Committee*, 945 A.2d at 344). An arbitrator exceeds his or her authority "if the arbitration award fails to 'draw its essence from the agreement.'" *Nappa*

- 12 -

*Construction Management, LLC*, 152 A.3d at 1132 (quoting *Rhode Island Employment Security Alliance Local 401, SEIU, AFL-CIO*, 840 A.2d at 1096).

In determining whether the CBA included such a limitation, the arbitrator examined specific provisions of the CBA.[9] He noted that Article X of the CBA "define[s] the part-time faculty assignment criteria for available courses, including 'qualifications and prior teaching experience.'" In addition, the arbitrator pointed to Article I's requirement that part-time faculty teach a total of six credits over two academic years to maintain their bargaining-unit status. The arbitrator determined that the requirements outlined in Article I "do not define minimum or maximum work load assignments." The arbitrator further found that the assignment criteria for courses laid out in Article X only included "'available course offerings' (without limit), 'academic credentials,' 'previous teaching experience,' 'time in service,' and 'satisfactory past performance,'" without reference to a limitation on assignments.

The arbitrator ultimately found that URI rescinded Jolicoeur's "Special Programs Contract" solely because it "unilaterally imposed [a] two (2) course per semester cap" that was unsupported by Article X or the CBA as a whole. We consider the arbitrator's conclusion to be a "passably plausible" interpretation of the CBA; thus, we affirm the Superior Court judgment in its confirmation of the portion of the arbitral award that found the rescission of Jolicoeur's "Special Programs Contract" in violation of the CBA and required URI to pay Jolicoeur the $6,500 salary. *See Berkshire Wilton Partners, LLC*, 91 A.3d at 835.

---

[9] In its written submissions to this Court, URI concedes that the CBA is silent on the maximum number of course assignments.

- 13 -

# C

## Cease-and-Desist Remedy

URI also takes issue with the remedy imposed by the arbitrator. It argues that the cease-and-desist order "goes beyond what is reasonably necessary to remedy the substantive dispute in this matter." The arbitrator framed the issue before him as: "Is the grievance substantively arbitrable? If so, did [URI] violate the collective bargaining agreement when it rescinded the grievant's Special Programs Contract in September, 2013 as the result of its two (2) course per semester limit? If so, what shall be the remedy?" He further explained that "[t]he essential inquiry is whether the grievant was entitled to a Special Programs Contract * * * in addition to teaching two (2) courses in the [f]all, 2013 semester." The arbitrator then resolved the matter by reviewing the CBA and finding that it did not "contain a minimum or maximum assignment or teaching load per semester." He ultimately concluded that "[t]he rescission of the grievant's Special Programs Contract was a breach of Article X, because [URI] officials erroneously imposed a two (2) course per semester limit on the grievant."

Although we have concluded that the grievance was substantively arbitrable because its resolution required the interpretation of the CBA, we recognize that the heart of the dispute, as framed by the arbitrator, concerned the rescission of Jolicoeur's "Special Programs Contract," which governed his administrative assignment and not his separate course assignments. In fashioning his award, therefore, the arbitrator was required to consider a unique factual situation which is unlikely to pertain to all union members. By issuing a cease-and-desist order, however, the arbitrator potentially provided for prospective relief which might permit the union to bypass the grievance procedures set forth in the CBA and enforce the instant arbitral award in future disputes by filing contempt proceedings directly in court. *See Massachusetts Nurses Association*

*v. North Adams Regional Hospital*, 467 F.3d 27, 28-30 (1st Cir. 2006) (considering an arbitration award that contained a cease-and-desist order and noting that only in exceptional cases will an arbitral award be enforced as a means of resolving a subsequent dispute thereby "bypassing the normal grievance procedures").

While it is true that arbitrators need flexibility to address issues that parties to a contract may never have anticipated, *see United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597 (1960), "an arbitrator's broad authority to * * * fashion an appropriate remedy is not unbridled." *Rhode Island Council 94, AFSCME, AFL-CIO v. State*, 714 A.2d 584, 588 (R.I. 1998). Under the circumstances of this case, we are of the opinion that the cease-and-desist order remedy does not "draw its essence" from the CBA because it pertains not only to courses, but also administrative assignments not covered by the CBA. *Nappa Construction Management, LLC*, 152 A.3d at 1132 (quoting *Rhode Island Employment Security Alliance, Local 401, SEIU, AFL-CIO*, 840 A.2d at 1096). Therefore the arbitrator exceeded his authority by imposing such a broad remedy. *See id.* Accordingly, we remand the case to the Superior Court with directions to vacate the final sentence of the arbitrator's award, to wit: "The Employer shall also cease and desist from unilaterally imposing a two (2) course per semester limit on bargaining unit employees."

## IV

### Conclusion

For the reasons stated herein, we vacate the cease-and-desist order and affirm the judgment of the Superior Court in all other respects. The case shall be remanded to the Superior Court for further proceedings consistent herewith.

Justice Indeglia did not participate.

## SUPREME COURT – CLERK'S OFFICE

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Rhode Island Council on Postsecondary Education and University of Rhode Island v. American Association of University Professors, Part-Time Faculty United, a/k/a URI/AAUP, PTFU. |
| **Case Number** | No. 2016-53-Appeal. (PM 14-5703) |
| **Date Opinion Filed** | January 26, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, and Robinson, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer From Lower Court** | Associate Justice Jeffrey A. Lanphear |
| **Attorney(s) on Appeal** | For Plaintiffs: <br><br> Jeffrey S. Michaelson, Esq. <br><br> For Defendants: <br><br> Gina A. DiCenso, Esq. <br> V. Edward Formisano, Esq. <br> Michael D. Pushee, Esq. |